FOWLER v. B. & O. R. R. Co.

Decided November 19, 1881.

*(PATTON, JUDGE, Absent.)

| 18 | 579 |
|----|-----|
| 38 | 40 |
| 38 | 278 |
| 18 | 579 |
| 39 | 98 |
| 18 | 579 |
| 43 | 436 |
| 18 | 579 |
| 42 | 681 |
| 42 | 690 |
| 18 | 579 |
| 47 | 664 |
| 18 | 579 |
| 48 | 107 |
| 18 | 579 |
| 58 | 316 |

1. In an action for an injury to the person it is not necessary for the plaintiff to allege in his declaration and prove, that he was exercising ordinary care and was not therefore guilty of negligence, which contributed to his injury.

2. Upon a demurrer to evidence the demurrant must be considered as admitting all, that can reasonably be inferred by a jury from the evidence given by the other party, and as waiving all the evidence on his part, which contradicts that of the other party, and all inferences from his own evidence, which do not necessarily flow from it.

3. Where there is a demurrer to evidence, and the question in the Appellate Court is, whether or not a fact ought to be taken as established by the evidence either directly or inferentially in favor of the demurrer, the test is: Would the court set aside the verdict, had the jury on the evidence found the fact. If the verdict so finding the fact would not be set aside, such fact ought to be considered as established by the evidence demurred to.

4. The negligence of the plaintiff, which will defeat his recovery, must be a proximate cause of the injury.

5. To bar the plaintiff from recovery, his alleged act of negligence must be such, as, he could under the circumstances reasonably anticipate, would result in his injury.

6. The terms "negligence" and "ordinary care" are correlative terms. Ordinary care depends on the circumstances of the particular case, and is such care, as a person of ordinary prudence would under the circumstances have exercised.

---

*Submitted before he took his seat.

7. If the defendant has by its own act thrown the plaintiff off his guard and given him good reason to believe, that vigilance was not needed, the lack of such vigilance on his part is no bar to his claim for damages.

8. In an action for damages the judgment should be for the amount assessed by the jury and interest thereon from the date of the judgment, and not from the date of the verdict.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Harrison, rendered on the 29th day of June, 1878, in an action then pending in said court, wherein William W. Fowler was plaintiff, and the Baltimore and Ohio Railroad Company was defendant, allowed upon the petition of said company.

Hon. A. B. Fleming, judge of the second judicial circuit, rendered the judgment complained of.

The facts of the case fully appear in the opinion of the Court:

*C. Boggess*, for plaintiff in error, cited the following authorities: Sher. & Red. on Neg. § 478; 35 Ia. 191; *Id.* 449; 64 Mo. 297; 63 Ill. 117; 28 Ohio St. 340; 22 Ill. 271; 64 Mo. 484; 43 Ia. 662; 11 W. Va. 14; 5 Otto 439; 31 Gratt. 200; *Id.* 812; 47 N. Y. 400; 105 Mass. 77; 22 Minn. 165; 39 N. Y. 358; 52 Cal. 602; Code, ch. 131, § 18.

*P. H. Keck*, for defendant in error, cited the following authorities: Lacey's Dig. § 126; 9 U. S. Dig. (1st series) p. 499, § 68; *Id.* § 174; 20 Wis. 533; 29 Ind. 528; 11 U. S. Dig. (1st series), § 1624; 1 U. S. Dig. (N. S.), § 27; 6 W. Va. 509; 8 W. Va. 515–535; Lacey's Dig. § 399; 15 Gratt. 250; 11 Gratt. 697; 5 W. Va. 293; Sher. & Red. Neg. §§ 12, 266; 1 U. S. Dig. § 1481; 9 U. S. Dig. (1st series) § 174; *Id.* § 27; *Id.* §149; *Id.* § 1512; 11 U. S. Dig. (1st series) § 1530; 1 U. S. Dig. (N. S.) §§ 48, 49; 31 Md. 357; 6 U. S. Dig. (N. S.) § 209; 47 Ind. 471; 1 Add. Torts 514; 11 U. S. Dig. (1st series) §§ 1685, 1692, 1702, 1511; 29 N. Y. 383; 36 N. Y. 135; 4 U. S. Dig. (N. S.) § 173; *Id.* § 29; 5 U. S. Dig. (N. S.) § 122; *Id.* § 26; 29 Md. 574; 59 Ill. 554; 61 Ill. 385; 25 Md. 521; 36 How. (N. Y.) 407; Ang. Carr. §§ 547, 568, 569; 13 Pet. 181; Edwds. Bailm. 583, 584, 585, 586, 588, 589; Whart. Neg. §§ 304, 375, 383; *Id.* §§ 31, 36.

*John J. Davis* for defendant in error cited the following authorities: Sherm. & Redf. Neg. §§ 31, 44; *Id.* p. 14 § 12; *Id.* p. 32 § 28; 15 Wall. 401; 5 W. Va. 293; 11 Gratt. 697; 15 Gratt. 250; 29 Gratt. 431; Greenl. Ev. § 221; Edwards Bailm. 585, 586; Sherm. & Redf. Neg. §§ 266, 282, 487; 1 Add. Torts § 545; 4 Metc. 49; 4 Min. Inst. pt. 1 p. 749; 6 W. Va. 509; 8 W. Va. 515; 26 P. F. Smith 157; 8 Cent. L. Jour. 464; 20 Ill. 478; 19 Ill. 499; 36 Ill. 409; 38 Ill. 370.

JOHNSON, PRESIDENT, announced the opinion of the Court:

In November, 1870, the plaintiff filed his declaration in the circuit court of Preston county against the defendant in a suit to recover damages for an injury alleged to have been done him by the defendant. At a term of said court held in August, 1872, the defendant demurred to the declaration and at the same time pleaded not guilty. At a court held on the 16th day of April, 1874, the demurrer to the declaration was overruled, and the judge of the circuit court being so situated, that it was improper for him to preside at the trial of the case, " by consent of the parties" the case was removed to the circuit court of Harrison county. On the 1st day of June, 1876, a jury was empanelled, to try the issue joined in the case, and on the 6th day of June, 1876, the jury rendered a verdict for the plaintiff for $6,600.00, and on the 13th day of the same month on motion of the defendant the verdict of the jury was set aside, and a new trial was awarded. On the 8th day of December, 1876, the case was submitted to another jury, and on the 16th day of the said month that jury found for the plaintiff subject to the defendant's demurrer to evidence and assessed the plaintiff's damages at $7.250.00. The demurrer to evidence sets out all the evidence in the case. So the case stood until the 29th day of June, 1878, when the court decided against the defendant on its demurrer to the evidence, and rendered judgment against it for the amount of damages assessed by the last jury, to wit, the sum of $7,-250.00 with interest thereon from the 16th day of December, 1876, the date of the verdict.

To this judgment a writ of error and *supersedeas* was granted by this Court.

It is insisted by counsel for plaintiff in error, that the demurrer to the declaration should have been sustained. The declaration alleged, that the plaintiff was injured by the carelessness and negligence of the defendant. If this was proved, he had a right to recover, unless the negligence of the plaintiff was the proximate cause of the injury. There is much useless verbiage in the declaration; but it contains enough, if proved, to sustain the plaintiff's action.

It is insisted, that the declaration ought to have alleged, that the plaintiff when injured was in the exercise of ordinary care. This was wholly unnecessary, because if the plaintiff's want of ordinary care, or his contributory negligence, was the proximate cause of the injury, it was purely a matter of defence and need not be alleged in the declaration, the burden of proof of such negligence being on the defendant. *Snyder* v. *Pittsburg, Cincinnati and St. Louis Railway Company,* 11 W. Va. 14; *Sheff et ux.* v. *City of Huntington,* 16 W. Va. 307. The demurrer to the declaration was properly overruled.

Did the court decide rightly upon the demurrer to evidence? The rule, that must govern this Court in reversing a judgment upon demurrer to evidence, is well settled. The demurrant must be considered as admitting all, that can reasonably be inferred by a jury from the evidence given by the other party, and as waiving all the evidence on his part, which contradicts that of the other party as well as all inferences from his own evidence, which do not necessarily flow from it. *Muhleman* v. *National Insurance Company,* 6 W. Va. 508; *Miller* v. *Insurance Company,* 8 W. Va. 515; *McGraw* v. *Baltimore and Ohio Railroad Company, supra; Richmond and Danville Railroad Company* v. *Anderson, adm'r,* 31 Gratt. 812; *Trout* v. *Virginia and Tennessee Railroad Company,* 23 Gratt. 619.

Where there is a demurrer to evidence, and the question in the Appellate Court is, whether or not a fact ought to be taken as established by the evidence either directly or inferentially in favor of the demurree, the test is, whether the court would set aside the verdict, had the jury on the evidence found the fact. If the verdict so finding the fact would not be set aside, such fact ought to be considered as

established by the evidence demurred to.    Ware v. Stephenson, 10 Leigh 155; Richmond & Danville R. R. Co. v. Anderson, adm'r, supra.

From the evidence in this case, there is no doubt, that the plaintiff was entitled to recover, unless his own negligence contributed to the injury. The negligence of the plaintiff, which defeats his recovery, must be a proximate cause of the injury. Blaine v. Chesapeake and Ohio R. R. Co., 9 W. Va. 253; Sheff et ux. v. City of Huntington, 16 W. Va. 307. To bar the plaintiff from recovery, his alleged act of negligence must be such, as, he could under the circumstances reasonably anticipate, would result in his injury. Washington v. B. & O. R. R. Co., 17 W. Va. 190. The terms "negligence" and "ordinary care" are correlative terms. Ordinary care depends on the circumstances of the particular case and is such care, as a person of ordinary prudence under the circumstances would have exercised. Norfolk and Petersburg R. R. Co. v. Ormsby, 27 Gratt. 455. If the defendant has by its own act thrown the plaintiff off his guard and given him good reason to believe, that vigilance was not needed, the lack of such vigilance on the part of the plaintiff is no bar to his claim for damages. Sher. & Red. on Neg. § 28; Pennsylvania R. Co. v. Ogier, 35 Pa. St. 60; Ernst v. Hudson River R. Co., 35 N. Y. 9; Morrissey v. Wiggins Ferry Co., 47 Mo. 521; Clark v. The Eighth Avenue R. Co., 36 N. Y. 135; Newson, adm'x, &c., v. N. Y. Central R. Co., 29 N. Y. 383.

In the last mentioned case Johnson, Judge, in delivering the opinion of the Court said: "The law will never hold it imprudent in any one to act upon the presumption, that another in his conduct will act in accordance with the rights and duties of both, even though such other has once conducted himself in a contrary manner. Here the deceased was unloading the defendant's cars at the place, where they had been left for unloading, and at the very point designated by their agent, using his team, as all the parties contemplated, when the arrangement was made. It was part of the contract, that the deceased or some other person should go there with a team and take away the freight, which the defendants had transported in their cars and left there to be taken away in that manner. It is too plain for argument, that it was part of the

agreement, that the person thus going there for that purpose should not be molested or endangered in his person or property by any act or proceeding on the part of the defendant. It owed him a plain and clear duty not to expose him to danger, while he was there employed in that manner; and it does not lie with it to say, that he was guilty of negligence in going there under the agreement, even though the subordinate flagman, who knew nothing of the arrangement, warned him, that it was a dangerous place."

What are the facts in this case? The plaintiff was on the road to Baltimore in charge of cattle on a stock-train. He says, that when the train arrived at Rowlesburg, it was about eight or nine o'clock at night and was pretty dark. He says: "Just before the express train going west came up, I left the caboose to look after the stock, I left it at the instance of a person, whom, I supposed from his actions, to be the conductor. He was acting as conductor. I went back westward in the direction of the railroad-bridge to assist Mr. Cookman to get up his cattle. We went back to where the cattle were down, found a steer down belonging to Mr. Cookman. We used our poles to get him up. Some one in the caboose asked him, if we would have time to look after the stock, and he said: 'Yes, you will have time, I am going to pull out shortly, the main track is now mine.' The conductor said there was stock down, that needed attention, and some gentleman in the caboose said: 'Will we have time to attend to the stock?' * * * * It was a dark stormy night; the snow was falling very fast, when the express train came up. The express train was going westward. The first I noticed it, it was almost like a flash of lightning to me; I can't tell how far off it was; it was so close I couldn't move. It was almost in the midst of the flash I was struck. I think, as well as my memory serves me, I had a pole punching the steer, and had my back turned the way the train was coming. * * * I think it was but a very short time after I went out until the train came up. We hadn't accomplished anything, we had just got to work; don't think it could exceed three minutes. * * * The express train gave no signal, as it came up and passed us; I am positive of that; I had been over the road a few times—not very often, I had noticed,

that the trains would give a signal in passing a siding ;. I had noticed, that they would blow a whistle, slack their speed and ring a bell.   The express train, when it passed us, was running at a very rapid speed.   *   *   *   I was hurt by this train ; my right thigh was broken in two places, and my right arm was broken and my head bruised."

Stephen L. Blake, another witness for plaintiff, said : "The conductor came in just before they went out the last time, or at least a man that claimed to be conductor, and notified the drovers, that if they wanted to see after their cattle, they had better do it, his time was out and he was entitled to the main track, and was going to pull out in a very short time, and Mr. Cookman and Mr. Fowler then went out to look after their cattle."

John Alexander, another of plaintiff's witnesses said : " The conductor came in from behind and said, there were cattle down in the train behind us, and we had better look after them.   Cookman and Fowler were sitting in the caboose, when this remark was made.   The conductor said, the cattle had better have attention paid them and try to get them up, before he pulled out.   The conductor said, he would not have many more minutes to stay there, said, he had a right to the road and would pull out in a few minutes.   When the conductor came in and made these remarks, Mr. Fowler and Mr. Cookman, who were sitting together, got up and went out of the caboose to see to their cattle.   They started out immediately."

The testimony under the rule, that governs us, shows, that in pursuance of the assurance of the conductor of the stock-train the plaintiff went out to look after the cattle and was trying to get a steer up, standing with his back toward the approaching train while thus employed; that it was a dark and stormy night, and within a few minutes after he commenced his task, the express train at rapid speed without giving any signal swept by the siding and inflicted the injury complained of.   Under these circumstances was the plaintiff guilty of contributory negligence?   He did not know the schedule-time of the trains.   He did not know, that the stock-train was not entitled to the main track, but of course supposed it was, as the conductor had assured him, that such was

the fact. Of course thus assured he was thrown completely off his guard by the act of the defendant and supposed there was no danger, and he was justified in apprehending none; and apprehending no danger under these circumstances he was not guilty of negligence, if he did not look for a train. There was no necessity to look. The conductor told him, there was no danger, in effect, that while he went to look after the cattle, it was not possible for a train to pass. He certainly under these circumstances was not guilty of negligence, that contributed to his injury; and the court was fully authorized to decide for him upon the demurrer to evidence. If the jury upon the same facts had found for the plaintiff, we would not be authorized to set aside the verdict.

But the circuit court committed manifest error in giving judgment for interest from the date of the verdict. In an action for damages the judgment should be for the amount assessed by the jury and interest on this amount from the day the judgment is actually rendered, and not from the date of the verdict. *Hawker* v. *B. & O. R. R. Co.*, 15 W. Va. 628.

The judgment of the circuit court in this case must be reversed, with costs to the plaintiff in error; and this Court proceeding to render such judgment, as the circuit court should have rendered, judgment is here entered for the plaintiff against the defendant for $7,250.00, the amount of damages assessed by the jury, with interest thereon from the date of the judgment in the circuit court.

JUDGES HAYMOND AND GREEN CONCURRED.

JUDGMENT REVERSED.