[No. 8982. Department Two. — July 28, 1886.]

HENRY A. SANBORN, RESPONDENT, v. MADERA FLUME AND TRADING COMPANY, APPELLANT.

EMPLOYER AND EMPLOYEE — DEFECTIVE MACHINERY — LIABILITY OF MILL-OWNER. — It is the duty of the owner of a saw-mill to furnish suitable and safe machinery for the use of his employees, and he cannot divest himself of liability for injuries to an employee, caused by defective machinery, by intrusting the performance of that duty to his servants.

ID. — KNOWLEDGE BY EMPLOYEE OF DEFECTS. — The owner of the mill is not liable for such injuries to an employee if the latter knew or had the means of knowledge of the defects in the machinery, and of the dangers and risks likely to result from its use.

ID. — DANGER OF EMPLOYMENT — INSTRUCTION. — The action was brought by an employee in a saw-mill against his employer to recover damages for injuries alleged to have been caused by defective machinery. The defendant requested the court to instruct the jury that "when a party works with or in the vicinity of a piece of machinery insufficient for the purpose for which it is employed, or for any reason unsafe, with a knowledge or means of knowledge of its condition, he takes the risk incident to the employment in which he is thus engaged, and cannot maintain an action for injuries sustained arising out of accidents resulting from such defective condition of the machinery." Held, that the instruction was properly refused, as it failed to include as one of the conditions upon

70  261
72  199

70  261
88  369

70  261
99  421

70  261
101 122

70  261
102 466

70  261
104 630

70  261
105 83

70  261
114 182

70  261
122 618

70  261
131 432

70  261
140 512

which the plaintiff could not maintain the action that he knew or might have known that his employment involved danger to himself.

Id. — Negligence of Employee — Question for Jury. — In such an action, the question whether the plaintiff was negligent or not is one of fact for the jury, and the knowledge of the plaintiff of the defectiveness of the machinery is only one of the probative facts from which the ultimate fact of negligence must be determined.

Id. — Expert in Saw-mills — Evidence. — On the trial, a witness for the plaintiff testified in rebuttal, after showing himself qualified as an expert, that at the time of the accident the log being sawed did not pinch the saws, and that the machinery was being operated in the usual manner. *Held*, that the evidence was proper.

Appeal from a judgment of the Superior Court of Santa Clara County, and from an order refusing a new trial.

The facts are stated in the opinion.

*McKisick & Rankin,* and *McAllister & Bergin,* for Appellant.

If the sword was defective, and by its defects caused the accident, yet, if the plaintiff knew of the defects, and after such knowledge continued to work, then he assumed the risk of the defects, and cannot recover in this action. (Civ. Code, sec. 1970; *Camp Point Mfg. Co. v. Ballou,* 71 Ill. 417; *Hayden v. Smithville Mfg. Co.,* 29 Conn. 558; *Atchison, T. & S. F. R. R. Co. v. Plunkett,* 25 Kan. 201; *Flannagan v. C. & N. W. R. R. Co.,* 50 Wis. 470; *Sullivan v. India Mfg. Co.,* 113 Mass. 398; *Slater v. Jewett,* 85 N. Y. 66; *Jones v. Phillips,* 39 Ark. 17; *Dillon v. U. P. R. R. Co.,* 3 Dill. 323; *McGlynn v. Brodie,* 31 Cal. 376; *Sweeney v. C. P. R. R. Co.,* 57 Cal. 15; *Green etc. R'y Co. v. Bresmer,* 97 Pa. St. 106; *Sowden v. Idaho Quartz M. Co.,* 55 Cal. 443; Thompson on Negligence, 1008, 1009; *Mansfield Coal Co. v. McEnery,* 91 Pa. St. 194.)

*D. M. Delmas,* for Respondent.

The corporation owed the duty of furnishing its employees safe machinery. (*Beeson v. Green Mountain,* 57 Cal. 29.) It could not divest itself of this duty by delegating it to an employee. (*Brothers v. Carter,* 52 Mo.

372; *Fuller* v. *Jewett*, 80 N. Y. 46; *Chicago* v. *Swift*, 45
Ill. 197; *Brabbets* v. *Chicago etc. R. R. Co.*, 38 Wis. 289.)
The testimony of the witness Parkinson was admissible.
(*Camp Point Mfg. Co.* v. *Ballou*, 71 Ill. 417; *Ward* v.
*Salisbury*, 12 Ill. 369; *Spickerman* v. *Clark*, 9 Hun, 133;
*Fenwick* v. *Bell*, 1 Car. & K. 312; *Bellefontaine* v. *Bailey*,
11 Ohio St. 333; *Blodgett* v. *Farmer*, 41 N. H. 398; *Chi-
cago* v. *Greer*, 9 Wall. 726; *Dean* v. *McLean*, 48 Vt. 412;
*Cooper* v. *Central etc. R. R.*, 44 Iowa, 134; *Cincinnati* v.
*Smith*, 22 Ohio St. 227; *Rust* v. *Eckler*, 41 N. Y. 488;
*Leary* v. *Woodruff*, 19 Alb. L. J. 336.)   Mere knowledge
of the defects in the machinery, without knowledge of
the danger resulting from the defects, is not sufficient to
charge the plaintiff with negligence. (*Lasure* v. *Granite-
ville Mfg. Co.*, 18 S. C. 280; *Clark* v. *Holmes*, 7 Hurl. & N.
937; *Snow* v. *Housatonic R. R. Co.*, 8 Allen, 450; S. C., 85
Am. Dec. 720; *Cook* v. *St. Paul*, 32 Alb. L. J. 319; *Russell*
v. *Minneapolis*, 32 Minn. 233; *Lawless* v. *Connecticut etc.
R. R.*, 136 Mass. 5; *Dorsey* v. *Phillips etc. Co.*, 42 Wis. 598;
*Huddleton* v. *Lowell*, 106 Mass. 286; *Mayes* v. *Chicago etc.
R. R. Co.*, 14 N. W. Rep. 340; *St. Joseph* v. *Chase*, 11
Kan. 58.)

BELCHER, C. C.—This is an appeal from a judgment
in favor of plaintiff, and an order denying the defendant
a new trial.

The action was brought to recover damages for injuries
sustained by plaintiff while working as an employee about
defendant's saw-mill, situate in the county of Fresno.
It is alleged in the complaint that the injuries were
caused by defective machinery used in the mill, and that
the defects were known to the defendant, and unknown
to the plaintiff.   The answer denies that the alleged de-
fects were known to the defendant, and alleges that they
were known to the plaintiff, and that the injuries sus-
tained by him were the direct result of his own negli-
gence and the negligence of his fellow-servants.

It appears that when the accident happened the mill had been recently erected, and had been in operation only about ten days. It was put up by one Woodsum, acting as superintendent, and one White, acting as mill-wright. When it was nearly completed, White discovered that there was no "sword," and he so informed Woodsum. Woodsum directed him to make a temporary sword, and he did so out of a piece of old iron which he found in a neighboring mill. This temporary sword was put in the mill, and used till after the injury to the plaintiff.

The mill had two circular saws, and the sword was placed behind and in line with them, and about two or three inches distant from them, its function being to enter the cut made by the saws as the log moves onward, and to keep it from closing up and pinching the saws as they pass through it. A good sword, if it failed to enter the cut, would stop the on-moving log, and no injury would result. This temporary sword was not a good one, and was not safe. It was not stiff enough and not strong enough, and was too rough, and not true.

The injury to plaintiff was caused in this wise: There was upon the carriage a log eighteen inches square and fourteen feet long, which had been sawed into three pieces, each six inches thick, and technically called "cants." These cants were lying one on top of the other, and were to be sawed through again. When the carriage started they were carried forward and cut by the lower saw till they reached the line of the sword. The sword, instead of entering the cut, as it should have done, struck the end of the cants, and bent to one side. This caused the cants to deflect slightly from a right line, and this deflection cramped the lower saw. The teeth of this saw threw the cramping cants upward, and as they came up the teeth of the upper saw caught the topmost cant and hurled it back with great force. The projected cant stuck the foot of the plaintiff, who was standing at the

log-way, about forty feet distant, attending to his duties.

About the time the mill was started, the plaintiff was employed by Woodsum to act as foreman in the yard. His duties were to work on the log-way, look after the Chinese, change the men from place to place, and keep the mill running. He had nothing to do with the machinery; that was in charge of White, the millwright.

At the trial, it was claimed for the plaintiff that the accident was the result of the defectiveness of the sword, and we think the jury were justified in so finding.

It was also claimed that the defectiveness of the sword was chargeable to the negligence of the defendant, and we think the evidence fully sustained that position. When the sword was made, it was known by the mechanics who fashioned it to be a bad one and unsafe. But it was the duty of the defendant to furnish suitable and safe machinery, and it could not divest itself of liability by intrusting the performance of that duty to its servants. The rule upon this subject is correctly stated in *Fuller* v. *Jewell*, 80 N. Y. 52, where the court says "that acts which the master, as such, is bound to perform for the safety and protection of his employees cannot be delegated so as to exonerate the former from liability to a servant who is injured by the omission to perform the act or duty, or by its negligent performance, whether the nonfeasance or misfeasance is that of a superior officer, agent, or servant, or of a subordinate or inferior agent or servant, to whom the doing of the act or the performance of the duty has been committed. In either case, in respect to such act or duty, the servant who undertakes or omits to perform it is the representative of the master, and not a mere co-servant with the one who sustains the injury. The act or omission is the act or omission of the master, irrespective of the grade of the servant whose negligence caused the injury, or of the fact whether it was or was not practicable for the master to

act personally, or whether he did or did not do all that he personally could do by selecting competent servants, or otherwise to secure the safety of his employees." See also *Beeson* v. *Green Mountain G. M. Co.*, 57 Cal. 20.

The principal question presented for our consideration relates to the alleged negligence of the plaintiff. It is insisted for the appellant that if the plaintiff knew or had means of knowledge of the defects in the sword, and still voluntarily continued to work about the mill, he was guilty of such negligence as would prevent his recovering damages in the action. The court very clearly and pointedly instructed the jury that if the plaintiff knew or had the means of knowledge of the defects in the sword, and of the dangers and risks likely to result from its use, then he could not recover; but it refused to give an instruction asked by the defendant, as follows:—

"The general rule is, that an employer who provides machinery must see that it is suitable and fit for the use for which it is intended, but this rule does not require the owner of a saw-mill to adopt the latest improvements in its construction, nor does the relationship of employer and employee involve a guaranty by the employer of the employee's safety. When a party works with or in the vicinity of a piece of machinery insufficient for the purpose for which it is employed, or for any reason unsafe, with a knowledge or means of knowledge of its condition, he takes the risk incident to the employment in which he is thus engaged, and cannot maintain an action for injuries sustained arising out of accidents resulting from such defective condition of the machinery."

We think the rule as stated by the court correct, and that the instruction asked was rightly refused, because it failed to include as one of the conditions upon which the plaintiff could not maintain his action that he knew or might have known that his employment involved danger to himself.

Shearman and Redfield, in their work on Negligence, after stating in section 94 the general rule, that when the servant's action is founded on the assumption that the master ought to have known of the defect which caused the injury it is clearly a sufficient defense to show that the servant had equal means of knowledge, say, in section 95: "This rule has, however, been very properly held to be applicable only to such defects as the servant ought reasonably to have foreseen might endanger his safety. If a person of ordinary prudence would not have believed that the servant could in the regular discharge of his duties be injured by the defect, the servant may properly disregard it without losing his right to complain if while pursuing his ordinary course he suffers from such defect."

This rule was recognized in *Sweeney* v. *Central Pacific R. R. Co.*, 57 Cal. 15, and has been declared to be the true rule in many other cases.

In *Russell* v. *Minneapolis*, 32 Minn. 233, the court said: "We shall not here enter into any general discussion of the question when and under what circumstances a servant takes upon himself risks incident to the use of unsafe machinery by continuing to use it without objection after knowledge of its defective character. We simply say that it is not enough that the servant knew or ought to have known the actual character and condition of the defective instrumentalities furnished for his use. He must also have understood, or by the exercise of ordinary observation ought to have understood, the *risks* to which he is exposed by their use." And in a later case, *Cook* v. *St. Paul*, 32 Alb. L. J. 319, the same court said: "It is one thing to be aware of defects in the instrumentalities or plan furnished by the master for the performance of his services, and another thing to know or appreciate the risks resulting or which may follow from such defects. The mere fact that the servant knows the defects may not charge him with contributory

negligence or the assumption of the risks growing out of them. The question is, Did he know, or ought he to have known, in the exercise of ordinary common sense and prudence, that the risks, and not merely the defects, existed?"

In *Mayes* v. *Chicago, R. I. & P. R'y Co.*, 14 N. W. Rep. 340, the Supreme Court of Iowa said:—

"He must have known or possessed the means of knowing that the absence of the blocks was a defect causing danger to him and to others. It is very plain that to bring the case within the rule above stated, the intestate must have known, or in the exercise of reasonable diligence could have known, the dangers and perils resulting from the absence of the blocks. Now, if it should appear that the intestate, by reason of his lack of experience, did not know, or in the exercise of ordinary diligence could not know, of these perils and dangers, the law will not hold that he waived the negligence of defendant." (See also *Snow* v. *Housatonic R. R. Co.*, 8 Allen, 441; S. C., 85 Am. Dec. 720; *Lawless* v. *Connecticut River R. R. Co.*, 136 Mass. 5; *Dorsey* v. *Phillips & C. Co.* 42 Wis. 598; *Lazure* v. *Graniteville M. Co.*, 18 S. C. 28; Wharton on Negligence, sec. 217.)

Certain other instructions were given at the request of the plaintiff, and are claimed to have been erroneous; but we fail to see that they misstated the law of the case, or in any way prejudiced the defendant. In one of them the jury were told that if the sword was obviously insufficient and unsafe for the purposes for which it was intended and used, and that by reason of such insufficiency and unsafeness the accident happened, without any fault or negligence on plaintiff's part, he was entitled to a verdict; and in the other, that if the plaintiff was an employee of the defendant at its mill, and it was no part of his duty either to put up or keep in order the machinery of the mill, then, even if they should find that he knew that the sword which was alleged to have caused the

accident was defective, that fact alone did not, as a matter of law, charge him with negligence in undertaking or continuing his work at the mill; that such knowledge, if it existed, was merely a fact to be weighed by the jury in determining the ultimate question of his negligence.

It is urged that if the sword was "obviously insufficient and unsafe," then the plaintiff could not have been "without any fault or negligence." But why not? Notwithstanding the sword was obviously insufficient, and therefore known to the plaintiff to be unsafe, still he might not have known or had reason to suspect that it threatened danger to him; and in that case, as we have seen, he was not chargeable with negligence.

Whether the plaintiff was negligent, and so barred from recovering damages for his injury, or not, was a question of fact, and not of law, and the court properly instructed the jury that the plaintiff's knowledge of the defectiveness of the sword was only one of the probative facts from which they must determine upon the ultimate fact of his negligence.

It is also claimed that the court erred in permitting the witness W. F. Parkinson, when called in rebuttal, to answer certain questions asked by counsel for plaintiff. We are unable to see that the court erred in its rulings.

The witness had shown himself qualified to speak as an expert of saw-mill machinery, and the manner of operating it, and under the circumstances the question seems to us to have been pertinent and proper.

In our opinion, the judgment and order should be affirmed.

SEARLS, C., and FOOTE, C., concurred.

The COURT.— For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.