WILLIAM EDDY v. THE AURORA IRON MINING
COMPANY.

*Master and servant—Negligence—Assumption of risks by employé—
Contributory negligence.*

1. The doctrine that a servant assumes all the dangers that are apparent to him when he enters the employment has no application to a case where the danger is questionable or debatable, and when it is apparent only to those possessing peculiar skill and knowledge in such matters.

2. In this case plaintiff sought to recover damages for injuries sustained by him by the falling of a platform in defendant's mine upon which he was at work, and which he alleges it was the duty of defendant to inspect from time to time, which duty it neglected to perform. A verdict was directed in favor of defendant on the ground of contributory negligence. And it is held that there was evidence to support the charge of negligence, and that the case should have been submitted to the jury.

Error to Gogebic. (Williams, J.) Argued June 5, 1890. Decided June 27, 1890.

Negligence case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Hayden & Young,* for appellant.

*Riley & King (Howard Morris,* of counsel), for defendant.

CAHILL, J. The plaintiff sues to recover damages for

injuries sustained by him while working as a common miner in the defendant's mine, September 11, 1888. The injury was caused by the falling of a "set" or platform upon which he was employed.

The Aurora is a hematite or soft ore mine, and the method adopted for carrying on its operations is what is known as the "Nevada system," and requires an elaborate system of timbering in the stope to permit the taking of ore.

The plaintiff's case, as stated in his declaration, is substantially as follows: He was employed in stope No. 1, of shaft No. 5. The shaft was about 200 feet deep, and the stope at the bottom of the shaft was about 60 feet long and from 22 to 25 feet wide, and about 40 feet high. The mining was conducted by taking down ore from the back or roof of the stope. As the work progressed upward, and the stope was mined out in that direction, successive sets of timber were put in, commencing at the bottom, for the purpose of forming a staging or scaffold, upon which the miners could work at the roof in taking down the ore, and also to support the sides of the stope to prevent ore from falling inward or downward, and to support on the top thereof loose ore mined down from the roof. Such sets of timber were required to be of strong material, strongly built, and firmly braced. The plaintiff had nothing to do with the furnishing or placing of such timbers, or building of such staging, or the care thereof. His duty was the mining of ore by blasting and picking, in which work he was obliged to stand upon the top of such staging or sets, on the floor of poles, called "lagging." This floor of poles also received and held piles of ore brought down in the process of mining. It was necessary in such mining to accumulate large masses of ore on top of such staging until it could be let down, by lifting the poles, to the bottom. The weight of ore

thus accumulated from time to time on top of the staging or sets made increased care necessary in the construction and bracing of such staging or sets to prevent a lateral movement thereof, by which they might become weakened, loosened, and liable to fall. He alleges that the duty of providing timbers suitable for the purpose of constructing such several sets of timbers or staging, and of taking all the means necessary to make the same solid, firm, and safe for the purposes and to meet the requirements described, and to examine the same from time to time, and keep them in repair, devolved upon and was assumed by the defendant, but that defendant neglected its duty in that regard.

That prior to the accident the defendant had constructed and placed in the stope where it occurred a staging or scaffold consisting of several sets of timbers, each of which was about seven feet wide and nine feet high. There were three sets of such timbers across the width of the stope, upon each of which was built upward three additional sets, making the staging four sets high and three sets wide. The two walls of the stope were called, the upper, the "hanging," and the lower, the "foot wall." Cross-timbers on the foot-wall side were placed against and in the ore or rock, but on the upper or hanging side the sets of timbers were supported only by upright posts, leaving spaces of varying widths between the staging and the hanging wall.

"That by the negligence of the defendant, and its inattention and violation of its duty in the premises, said staging and scaffold were built of improper and insufficient materials, and of materials not fit for the purpose, and the same was improperly and insufficiently constructed on the foot-wall side, and was insufficiently, improperly, and negligently constructed on the hanging-wall side, for the purpose of being a solid and safe structure, and was not supported or braced so as to prevent the same from swaying or giving away, or the timbers thereof from

becoming loose or getting out of place, and was not firm or solid enough to sufficiently bear the weight of ore necessarily accumulated on the top thereof, or withstand such motion as operations by the plaintiff and others upon the top thereof would necessarily produce; and insufficient and improper timbers and materials were by the defendant provided for that purpose, so that at the time aforesaid said structure was unsafe for plaintiff to work upon, on the top thereof, as he was obliged to do. All which was well known to defendant, but was unknown to plaintiff.

"That, on the day aforesaid, plaintiff was at work upon the top of said high staging, mining down ore, as he was employed to do, when, without any fault on his part, but by and through the wrongful conduct, carelessness, and default of the defendant as aforesaid, said structure fell with the plaintiff, and a quantity of ore. accumulated thereon."

The plaintiff claims to have been seriously injured in his back, and to be crippled and permanently disabled.

After the proofs had all been taken, the court took the case from the jury, and directed a verdict for the defendant. In doing so the court said:

"In this case the evidence of the plaintiff himself is that he had knowledge that no stull timber or blocking was placed between the timber sets and the hanging wall; and the only evidence in the case charging negligence on the part of the defendant is the fact that such lagging and blocking were not put there.

"The plaintiff is a man fifty-one years of age, with thirteen years' experience as a miner. He had labored thirteen years as a miner, with large experience in hard and soft ore mines. Knowing it was not put there, and no promise having been made by the defendant or its authorized agents to put in the blocking, and no assertion made that it was safe without, being a man of experience and age, he should have known himself; and it would be contributory negligence on his part to work there."

The sole question in the case is as to whether the court was right in taking the case from the jury, and in

directing a verdict for the defendant. The record contains all the evidence given on the trial; and, in determining whether the court below was right, a careful review of the entire case has been necessary.

It appears that Capt. Hibbard was the superintendent of the mine; that Capt. Brewer was the mining captain, and had immediate charge of the operations under ground. William Trethewy had charge, under Capt. Brewer, of the timber-men. The plaintiff, and others working with him, were getting out ore under a contract at 40 cents a ton. They had nothing to do with the timbering, either in making or supporting the scaffolds. The duty and the negligence of the defendant is much more broadly charged in the declaration than is stated by the circuit judge in his instruction to the jury. In addition to the duty of properly building, supporting, and bracing the sets or scaffolds, it is said that it was the defendant's duty to examine the same from time to time, and keep them in repair. It is charged, also, with inattention and violation of its duty in the premises, by means whereof the staging or scaffold was not supported or braced so as to prevent the same from swaying or giving away, or the timbers thereof from becoming loose, or getting out of place. In other words, the defendant is charged with the duty of inspecting the staging and its supports, and with neglecting that duty.

There is evidence in the record to support this charge of negligence. The plaintiff says that the set which fell had been supported and braced by a "sprag," which was a short piece of timber, one end of which rested against the hanging wall, and the other against the upright posts of the set. This was not the best way of supporting and protecting the timbers, but it was a method adopted in that mine to a considerable extent, and it will not do for the defendant to claim that it was unsafe and danger-

ous. Nor can the plaintiff be expected to know more than the owners and principal officers of the mine as to the best methods of supporting and steadying the platform or sets. Plaintiff says he knew that the set that fell had been thus supported, and stated that the sprag was in position at one time, and he had no reason to know or apprehend that it was out of position. The evidence shows that, if this sprag had remained in position, the accident might not have occurred, but that in some manner it must have been knocked out of its place. The men worked in this mine night and day, the shifts changing at 7 in the morning and evening. The evidence shows that two or three shifts (which would have been from 24 to 36 hours) previous to the accident a large amount of ore had been blasted down in large pieces, and had fallen upon this particular set. There was evidence from which the jury would have been justified in finding that the sprag had been knocked out of position by some of this falling ore. It was well calculated to do just that thing. If that be so, it was a fact which was well known to the officers of the mine; and it was their duty to cause an inspection and examination to be made of these timbers and their braces after such blasts, to see whether or not they had been knocked out of place. If they saw fit to employ a method of bracing and support for the timbers which was less safe than that of putting in lagging and blocking, it became necessary that they should adopt such frequent inspection as was necessary to prevent accident. The evidence shows that no such inspection was made or care taken by the officers of the mine, although there was plenty of time after the blast, and before the accident.

But we do not agree with the learned circuit judge on the main proposition in this case,—that, because the plaintiff knew that no lagging and blocking had been put

between the timbers and the hanging wall, he was there-
fore guilty of negligence, if such a method of doing the
work was negligent on the part of the defendant. The
question is not whether the plaintiff thought it was safe,
but was it in fact safe, or as safe as it could be made by
skill and watchfulness? The defendant is not excused by
showing that the plaintiff thought it was safe. The
plaintiff may or may not have had the requisite knowledge
or skill to decide so important a question. But, whether
he had or not, it was no part of his business to look
after the safety of the sets on which he was at work.
This duty devolved on the owners, and the agents they
had put in charge. The plaintiff was not required to
plan, construct, or keep watch. Ingenuity and skill in,
and devices for, getting out ore at the least possible
expense are in demand, and properly so, but the first con-
sideration should be the safety of the men employed.
The owners of the mine are bound to employ skillful
men to plan, construct, and watch these sets or platforms
upon which their men risk their lives. At the best the
work is full of danger, and the miner takes all necessary
risks upon himself; but he assumes only the risks incident
to his employment, after the owners have used reasonable
care and watchfulness to provide a safe place for him to
work in.

When Brantlin called Capt. Brewer's attention to the
condition of the set, if Brewer could not see the condi-
tion of the timbering from where he was at the time,
neither could Brantlin or the plaintiff. It was Brewer's
duty to go where he could see and examine it. The
plaintiff had a right to expect that this duty would be
performed, and the fact that immediate steps were taken
by Brewer towards the performance of this duty—that
men were set to work getting out timbers for that pur-
pose—had a tendency to assure the plaintiff that Brewer

was doing whatever was necessary to be done for his protection. The evidence shows that the work of timbering up and of bracing and supporting the sets was done in the day-time, whereas the plaintiff worked, at least a part of the time, in the night, and he could not tell just what had been done in his absence; but he was justified in supposing, in reliance upon the mining captain's superior knowledge and judgment, that everything had been done that was necessary to make it safe for him to work where he was sent to work.

When it is remembered that it was always dark in the mine; that the defect, if it was the displaced sprag, could only have been discovered by one groping with a lamp for that purpose, and, if it consisted in the use of the sprag instead of lagging and blocking, that this method was deliberately adopted by the defendant as safe,—it seems to me it is going very far to say that plaintiff was, as a matter of law, guilty of contributory negligence because he did not in the first case find out about the displaced sprag, or in the second case teach his superiors a better method of doing their business.

The cases cited by defendant's counsel, to show that a servant assumes all the dangers that are apparent to him when he enters the employment, have no application to a case when the danger is questionable or debatable, and when it is apparent only to those possessing peculiar skill and knowledge in such matters. I believe the views here expressed are amply supported by authority. *Smith v. Car-works*, 60 Mich. 501, and cases cited by Mr. Justice SHERWOOD. We think the case should have been left to the jury.

The judgment is reversed, and a new trial granted.

The other Justices concurred.