# CHARLESTON.

### GRAHAM *v.* NEWBURG ORREL COAL & COKE CO.

Submitted June 13, 1893.—Decided November 18, 1893.

1. DAMAGES—EMPLOYER AND EMPLOYE—COAL MINES.

It is the duty of the operator of every coal-mine to provide ample means of ventilation, and to cause air to be circulated through the headings and working places, so as to dilute, render harmless and carry off dangerous and noxious gases. It is also his duty to employ a competent fire-boss to examine with safety lamp, immediately before each shift, working places and other places where dangerous and noxious gas is known to exist or is liable to exist. It is also his duty to employ a competent mining boss to keep careful watch over the ventilating apparatus and the airways, traveling ways, pumps and drainage, and to see that proper break-throughs are made, as required by law, and that all loose coal, slate or rock overhead in the working places and along the haulways be removed or carefully secured, so as to prevent danger to persons employed in the mine, and to provide props and timbers for the mine, and perform other duties required of him by law.

2. DAMAGES—EMPLOYER AND EMPLOYE.

Omission of these duties is negligence in the operator, and renders him liable to his employe for injury resulting from such omission of duty.

3. DAMAGES—EMPLOYER AND EMPLOYE—CONTRIBUTORY NEGLIGENCE.

While the general rule of law is that an employe, knowing of defects in machinery, appliances or in his working place, and still

continuing in service, assumes risks, and can not recover from his employer damages for injury arising from such defects, yet the rule is not without exception. Mere continuance in service with such knowledge is not *per se* negligence in the employe. He need not stop work in every instance of knowledge of a defect, but may run some risk by continuing service, provided the defects be not plainly dangerous, or be not such as ought to induce a prudent, careful man to believe that accident would probably ensue, and that looking to his safety he ought not to continue the work.

4. DAMAGES—EMPLOYER AND EMPLOYE—CONTRIBUTORY NEGLIGENCE.

Where an employe knows of defects in machinery, appliances, or his working place, and is by words, acts, or conduct of his employer lulled into a sense of security, and continues in service, and is injured by reason of such defects, he is not precluded thereby from recovery of damages from his employer, if the danger be not so plain and obvious that a prudent, careful man, anxious for his own safety, ought not to risk it.

P. J. CROGAN, for plaintiff in error.

I.—*Negligence is a question of fact for the jury.*—17 W. Va. 214; 27 W. Va. 163; *Riley* v. *Railway Co.*

II.—*Master not justified in exposing the servant to risks, &c.*—27 W. Va. 159.

III.—*Rules made by the defendants should be conformed to.*—28 W. Va. 617.

IV.—*The master should make proper inspection and tests.*—28 W. Va. 617; Code W. Va. 1891, App. p. 994, s. 10.

V.—*Master must not lull servant into a sense of security.*—31 W. Va. 152; 30 W. Va. 798.

W. G. BROWN, for defendant in error.

BRANNON, JUDGE:

Edward Graham brought trespass on the case against the Newburg Orrel Coal &·Coke Company, and, a verdict having been found for the plaintiff, the court set it aside, and Graham sued out this writ of error.

The action sought damages for injury from burning received by Graham while employed in mining coal in said company's mine, resulting from an explosion caused by fire-damp following a blast in the work of mining. That the explosion came from the fire-damp or inflamable gas is incontrovertible. That it is the duty of persons or cor-

porations operating coal-mines to use every reasonable precaution to keep the mines free from this dangerous gas, or neutralize and carry away what may inevitably be generated in the mines, so as to be harmless, by proper ventilation, not only appears from the common-law relating to the obligations of employers, but also from the definite letter and spirit of legislation recently enacted, to be found in Code, 1891, p. 991, and Acts 1887, c. 50.

It needs but a hasty look at the act to tell us of the solicitude of the legislature to save the lives of the many who toil in mines, and reduce to the smallest possible compass the great dangers inseparably connected with the occupation of mining. This legislation deserves to be enforced, to subserve the spirit which dictated it, and the very important ends it seeks to accomplish. When we find gas in a mine in quantity or condition dangerous, we may say it is *prima facie* evidence of negligence in the operator, because in the teeth of the statute.

That gas was in this mine in violation of law follows from the simple fact, that an explosion of it entailing injury to the miner took place. That the mine was infested with this gas and peculiarly dangerous from it, the evidence shows, and the fact was known to the mining-boss. All the more particular, therefore, should have been the care to free the mine of it.

The act, in section 10, demands that all mines generating fire-damp shall be kept free of standing gas in the worked and abandoned parts as far as practicable. There is nothing to show that in this instance the gas which worked the accident could not have been dissipated. There had been gas there for two weeks before the accident. The main heading was falling, and men were sent to put up timbers, and could not do so because of the presence of gas. Did not the superintendent and mining-boss know this? They could have, by the slightest diligence known it; they were bound to know it. The statute in section 10, requires the employment by the operator of a competent person called "fire-boss" in all mines subject to gas, and he is required to examine every working place and all other places where gas is known to exist, or is liable to ex-

ist, with safety lamps, immediately before each shift; and the workman must not enter, and the operator must not permit him to enter, any working place, until it has been examined by a fire-boss and reported safe. All this shows plainly that it is the imperative duty of the owner of the mine to search for this dangerous gas, cost what it will. There was no fire-boss employed in this case. No search was made just before the men went to work.

Next in what more particular respect does the plaintiff impute blame to the defendant? He says that the cross-cuts or break-throughs were left open. If so, then the fresh air from the fan, intended for the nostrils of the miners, and to drive out and dilute the noxious gas, would escape through these openings, and not reach the miners, leaving them without fresh air, and exposed to the imminent danger of the gas. This would be a gross dereliction of duty on the part of the mine-operator. The statute says he must furnish ample means of ventilation, and circulate air through the main and cross headings and working places, to dilute, render harmless and carry off noxious gases. He must adopt all appliances and means to accomplish this; and indeed the statute, in saying that when doors for directing ventilation are used, they shall be so hung as to close themselves, implies this all important precaution. A rule of this company expressly requires them to be tight. There was before the jury evidence of at least two witnesses very fully and squarely stating that the cross-cuts were open. There was evidence to the contrary, but not more than that, to show that they were open. The jury found that they were open. Certain it is that there was an explosion from gas; certain, also, it is that, if there had been at the place of the explosion an adequate quantity of ventilating air, explosion would not have occurred. It must have occurred either because the supply of air was insufficient, or because it escaped through openings on the way before it reached the location of this gas; and, as the claim and evidence of the defendant are that the fan was quite able to furnish an ample supply of air, why is the finding that these openings were unclosed not reasonable? I shall not cite authority for the proposition that, where evidence

is very conflicting on matters essentially material in the case, the jury are almost uncontrollably the judges of the weight of the evidence, the deductions therefrom, and the credibility of the witnesses, and neither the trial-court nor this court can overturn its verdict.

But it is said that, though defendant be guilty of negligence, yet the plaintiff can not recover, because he was himself guilty of contributory negligence, inasmuch as he knew—First, that the brattices were open; and, second, that the gas was in the mine. The plaintiff did know of the open brattices. It is true that if an employe know that the machinery or appliances are defective, or the place, where he works, is not in proper state or condition, and he continues in service, he can not recover for injury flowing therefrom. But this rule is not without exception. Such mere continuance in service is not *per se* or infallibly negligence. The danger must be such as may reasonably be expected to entail accident and injury, not a remote probability or chance of accident. It must be such as a fairly prudent, cautious man ought to think likely to result in accident, and which he ought not to risk. Does the rule require the employe in all cases to stop work simply because he knows of defective machinery or condition?

In this case, could the plaintiff fairly expect that these openings would leave an insufficient supply of air? And did he know that there was gas present, in which case the openings would be a real danger, otherwise not? Was it rash, or even imprudent, to work? Was he so in thinking he might go on safely? Under the circumstances of this case, you can not say that the situation was such as to impress him with a feeling of insecurity. To do so you must fix the rule unalterably that knowledge of any defect whatever, finally resulting in disaster, should have caused the employe to stop, and will forbid recovery. Would the interests of either employer or employe be subserved by such a rule? To know simply of a defect of machinery, or that the condition or surroundings of a working place are not just what they should be to guaranty safety, is not to be certainly or necessarily forewarned of danger. Does the employe from that knowledge in all instances assume all

risk? I think not. The question is, did he know, or ought he to have known, by the use of ordinary common sense and prudence, as applied in the particular instance, that dangers were before him likely to flow from the defect or condition? not simply that he knew the defect or condition existed. He need not in all cases quit work. He may run some risks, provided they be such as a prudent careful man would under the circumstances, run.

I am aware that this subject is one which is, and will continue to be, in practice, of great importance; but I do not know that by following it further here I could make it any clearer. The following authorities discuss it, and I think will sustain the views above presented: Cases cited on pages 513, 514, 35 W. Va., and pages 265, 266, 14 S. E. Rep. *McKelvey* v. *Railway Co.;* Beach, Contrib. Neg. § 372; *Wuotilla* v. *Lumber Co.*, 37 Minn. 153, (33 N. W. Rep. 551); *Russell* v. *Railway Co.*, 32 Minn. 230, (20 N. W. Rep. 147); *Soeder* v. *Railway Co.*, 100 Mo. 673 (13 S. W. Rep. 714); *Davis* v. *Railway Co.*, 53 Ark. 117 (13 S. W. Rep. 801); *Eddy* v. *Mining Co.*, 81 Mich. 548 (46 N. W. Rep. 17); *Colbert* v. *Rankin Union*, 72 Cal. 197 (13 Pac. 491); *Hulm* v. *Railway Co.*, 92 Mo. 440 (4 S. W. Rep. 937); *Sanborn* v. *Trading Co.*, 70 Cal. 261 (11 Pac. 710); *Ford* v. *Railroad Co.*, 110 Mass. 240; *Patterson* v. *Railroad Co.*, 76 Pa. St. 389; *Conroy* v. *Iron Works*, 62 Mo. 35; *Railroad Co.* v. *Ogden*, 3 Colo. 499.

It later occurs to me that the principle of point 7, in *Washington* v. *Railroad Co.*, 17 W. Va. 190, and reiterated in *Fowler* v. *Railroad Co.*, 18 W. Va. 579, applies strongly in support of this doctrine. That is that, "to bar the plaintiff from recovery, his alleged act of negligence must be such as he could reasonably anticipate would result in his injury." In point 4 of syllabus in *Wooddell* v. *Improvement Co.* (17 S. E. Rep. 386,) *supra* 23, we find strong support of the position above taken, as it lays down that if a brakeman know of the limb of a tree over the track, "and he appreciates the danger," he is chargeable with contributory negligence. Judge Holt in that case makes a very valuable collection of West Virginia cases on contributory negligence, and gives the salient points decided by them.

And, moreover, the question whether Graham, by continuing work after he knew that these openings had not been closed, was guilty of contributory negligence under all the circumstances, was a question for the jury. The fact, that he had such knowledge is unquestioned; but whether knowledge of that isolated fact would fix on him contributory negligence was dependent on many other facts and circumstances, and rendered it a question for the jury, and we do not see our way to reverse the jury on this point. For myself, I am clear in opinion that the mere knowledge that these crosscuts were open would not stamp the plaintiff with negligence, but was only probative or evidentiary before the jury on the inquiry whether Graham was chargeable with contributory negligence. The rule is correctly laid down in *Snoddy* v. *City of Huntington,* 37. W. Va. 111 (16 S. E Rep. 442) that "contributory negligence, when it depends upon questions of fact and testimony, is for the jury; but when the facts are undisputed, or indisputably established by the evidence, the question becomes one of law for the court." Where the evidence as to contributory negligence is conflicting and uncertain, the question is for the jury, and their verdict will not be interfered with. *Hanley* v. *City of Huntington,* 37 W. Va. 578 (16 S. E. Rep. 807). Though there may be a prominent fact which, taken alone, would sustain the defence of contributory negligence, yet if it depends upon surrounding circumstances, and is to be viewed with and receive quality and effect from them, the question of contributory negligence is for the jury. *Washington* v. *Railroad Co.,* 17 W. Va. 190; *Johnson* v. *Railroad Co.,* 25 W. Va. 570; *Riley* v. *Railway Co.,* 27 W. Va. 163. In this case the fact that Graham knew that the crosscuts were open had to be taken in connection with the question whether he knew there was, or likely was, gas in the mine, which was disputed, and whether he was ordered to go to work, and was lulled into a feeling of security by the assurance of an agent of the company that the place was safe. The question is none the less a jury question when the case is one where the employe continues work with knowledge of defects. Citations on pages 513, 514, 35 W. Va., and pages 265, 266 (14 S. E. Rep.) *McKel-*

vey v. *Railway Co.*, Shear. & R. Neg. § 215, note 4 ; *Hawley* v. *Railway Co.*, 17 Hun. 115 ; 82 N. Y. 370 ; *Sanburn* v. *Trading Co.*, 70 Cal. 261 ; 11 Pac. 710 ; *Johnson* v. *Railway Co.*, 43 Minn. 53 (44 N. W. Rep. 884) ; *Huhn* v. *Railway Co.*, 92 Mo. 440 (S. W. Rep. 937) ; *Eddy* v. *Milting Co.*, 81 Mich. 548 (46 N. W. Rep. 17.)

Next, as to charge against Graham that he knew that gas was in the mine, and yet worked on. This is the only point in the case giving me any difficulty. It depends upon evidence in some respects conflicting, and upon deductions therefrom, and the jury has found no contributory negligence imputable to the plaintiff; and with this remark I might dismiss the point. Graham was told that night that there was gas, not in the room he was working in, but in another place seven or eight yards distant. As I understand the evidence, which is not very intelligible, this gas was brushed out with his vest by McNaught, perhaps imperfectly, thus leading Graham to think there was no danger. The plaintiff says he did not rely on the statement, that there was gas in the mine, as he thought the person telling him had interested motives in telling him to induce him to go home, and the man was not an expert. He says the person did not tell him it was unsafe to fire shots. He stated, and there was no evidence to the contrary, that he had no experience with gassy mines, and was unacquainted with the qualities and danger of gas.

It is laid down in Whart. Neg. § 216, that when the employe, from inexperience, infancy or inability, is incapable of estimating the danger, he is not held to accountability for contributory negligence. It might be with some force said that the employe, if not an infant or imbecile, is bound to know and appreciate the danger if he enters into an employment. He is so bound as to dangers incident to that employment, but not those extraordinary or not properly incident. Where the defendant is shown to be chargeable with negligence producing injury to his employe, he is not excused unless he show that the plaintiff himself, by his own negligence, brought misfortune upon himself, which could not well be the case if, from inexperience or want of knowledge, the plaintiff knew not his danger. The guilty

defendant has no right to exemption for injury done to an innocent employe.

But there is an undisputed fact of decisive import under this head, which alone does away with the contention that, if Graham knew there was gas present, he can not recover, and it is this: That on Sunday, needing coal for the engine, the mine-boss went to Graham's house, and asked and urged him to work that night, and assured him that the mine was all right and safe, and he would have a nice night's work; and that he (Graham) supposed it was clear of gas when the mine-boss said it was all right, as he did not know anything about the danger of gas, and he had confidence in the statement of the mine-boss. The mine-boss made this statement, when he could not know it to be true, as he had not been in the mine for hours, and had not examined the mine before the men went to work, as the statute required.

Now, whether we consider this statement an order or a request, Graham was lulled into a feeling of security by it, and unless we could find, as we can not, that the danger was known to Graham, and was patent and manifest, so as to deter any reasonably prudent man, it frees Graham from contributory negligence. Wood, Mast. & Serv. §§ 352, 353; *Shortel* v. *City of St. Joseph*, 104 Mo. 114; (16 S. W. Rep. 397); 24 Amer. St. Rep. 317, and note. I regard it tantamount to an order to work. Had he refused, would he have been retained? But if not a command, it was an assurance by a superior having every means and with capacity to know, and bound to know, given to one not having equal means or capacity, not knowing the danger or having no definite knowledge of any ground of danger, inspiring confidence and a feeling of security.

In *Tarrant* v. *Webb*, 18 C. B. 797, commented on by Judge GREEN in *Criswell* v. *Railway Co.*, 30 W. Va. 826 (6 S. E. Rep. 31) the employe had, as in this case, been told by a fellow servant of the defect and informed his employer, who remarked that he must not listen to what they said; and the employe recovered because, as Judge GREEN said, the employer had lulled the employe into a sense of security. We must take into consideration the employe's

limited means of knowledge, and that, when laborers look to superintendents, they are not given to thought and foresight of danger. This Court held in *Hoffman* v. *Dickinson*, 31 W. Va. 142 (6 S. E. Rep. 53) that "if a master, having knowledge of a danger of which the servant is ignorant, by his conduct, actions, or words lulls the servant into a sense of security, in consequence of which the servant is injured, the master is answerable in damages." Defendant can not complain of plaintiff's want of vigilance as contributory negligence, when that very want of vigilance was attributable to his own act, direction or assurance of safety. *Railroad Co.* v. *Ogier*, 35 Pa. St. 60; *Totten* v. *Phipps*, 52 N. Y. 354; 1 Shear. & R. Neg. § 91.

"It is not contributory negligence for an employe, who is in doubt about the safety of the place where he has to work, to defer to the opinion and assurance of those who are supposed to know, and from their position are bound to have special knowledge, as to whether it is safe or not." *Iron Co.* v. *Erickson*, 39 Mich. 492.

And since writing the above I notice the case of *Fowler* v. *Railroad Co.*, 18 W. Va. 579, holding that, "if the defendant has, by its own act, thrown the plaintiff off his guard, and given him good reason to believe that vigilance was not needed, the lack of such vigilance on his part is no bar to his claim for damages."

If we can say that the plaintiff knew that gas was in the mine, yet we can not say that he knew it was there in such quantity as to make it dangerous, or that his danger was manifest or imminent or even probable.

Another consideration is that there was no fire-boss, as required by statute, to examine and test this mine, particularly dangerous because it was a deep shaft of 380 feet. It seems it would be his duty to fire the blasts used in mining. This explosion resulted from a blast shot by Graham. Had there been a fire-boss, we may say with safety the accident would not have taken place. Evidence was before the jury that Graham requested a fire-boss, but the reply was that one would cost too much. It is said that Graham and others, for extra pay, agreed to act for themselves as fire-boss; but this contention is not supported by evidence, and was overruled by the jury.

It appears from the case that this dangerous mine was not operated with such care and precaution for the safety of life and limb as required by law, and by reason of this the plaintiff received serious injury; and, seeing no legal reason to excuse the defendant or set aside the verdict of the jury, we must reverse the order of the Circuit Court setting aside the verdict and granting a new trial, and enter judgment for the plaintiff upon the verdict. Reversed.