MARY E. HALL v. CITY OF AUSTIN.

July 1, 1898.

Nos. 11,029—(166).

**Municipal Corporation—Negligence—Verdict Sustained by Evidence.**

The evidence justified the jury in finding that the defendant city was negligent in not exercising reasonable care to keep a sidewalk in a safe condition.

**Same—Care of Streets—Respondeat Superior.**

The duty of caring for and supervising the condition of its public streets is one which rests upon a municipal corporation as such, and the doctrine of respondeat superior applies.

**Same—Plank Sidewalk—Evidence of Decay.**

The claim being that the stringers underneath the plank in the sidewalk had become rotten, evidence that they were rotten a week or two after the accident was competent for the purpose of proving that they were rotten at the time the accident happened.

**Evidence of Person's Appearance by Person not an Expert.**

Any one, although not an expert, may testify to the appearance of a person,—as, for example, that he looked ill or pale, or appeared to be suffering pain.

**Incompetent Evidence—Answer not Responsive—Motion to Strike out.**

If the answer of a witness is not responsive to a proper question propounded to him, and the evidence is incompetent, the remedy of the opposite party is to move to strike it out.

**Witness—Explanation of Absence.**

It is competent for a party to account for the absence of a witness, when the failure to produce him, if the party was able to do so, would warrant an unfavorable inference against him.

**Damages not Excessive.**

The damages awarded *held* not to be excessive.

Action in the district court for Mower county to recover $5,000 for personal injuries caused by an alleged defective sidewalk. The cause was tried before Whytock, J., and a jury, and resulted in a verdict of $1,000 for plaintiff. From an order denying its motion for a new trial, defendant appealed. Affirmed.

Plaintiff's evidence, as to her injuries, showed that she was confined to her bed seven weeks; that she suffered great pain; that during most of the time she was unable to sleep or rest by reason of her pain; that, at the time of the trial, five months after she was injured, she had to be carried from her home to the court room; and that she has been practically unable to do any work since she was injured. According to her physician, she has chronic inflammation of the pelvic viscera, of the lining of the abdominal cavity, of the covering of the pelvic viscera, and of the abdominal cavity; her injuries are permanent; she has a great deal of inflamed tissue at present, and will have to subject herself to an operation in order to regain her health.

Defendant's seventh request, which was refused by the court, was as follows:

"The court further instructs the jury that if the unsafe condition of the sidewalk in controversy was caused by the action of frost during the winter and the thawing of the ground in the spring, it is your duty to find a verdict for the defendant, unless you further find that the defendant was guilty of negligence in the care of the sidewalk, or in not repairing the same after notice of its condition, and a reasonable time to remedy the defect after such notice."

*Greenman & Dowdall*, for appellant.

By the charter of the city of Austin, the duty of keeping streets and sidewalks in repair is conferred upon the street commissioner, and he is required to determine when sidewalks are in such condition as to be repaired or relaid. Sp. Laws 1887, c. 24, subc. 7, §§ 6, 13. It is therefore clear that the street commissioner is made a public officer, with duties relating to the care and supervision of the streets as an agency of the state; and the general principles of the liability of the city would not apply for his errors in judgment, nor for any negligence on his part.

*French & Wright*, for respondent.

The liability of the city for failure to keep its streets in repair rests upon the duty imposed upon the city, and not upon its officers as agents of the state. 2 Dillon, Mun. Corp. § 1017. It can of course be no excuse for the corporation, any more than it would be for an individual, that the work was done, and the want of care shown, by an employee or agent whom it had set at work. Weet v. Trustees, 16 N. Y. 161, note; City v. Seitz, 3 Minn. 205 (297); Fitzpatrick v. Slocum, 89 N. Y. 358; Atherton v. Village, 114 Mich. 241.

MITCHELL, J.

This action was brought to recover for personal injuries caused by a defective sidewalk. The negligence charged against the defendant was that it did not exercise reasonable care to keep the sidewalk in a safe condition.

The city charter (Sp. Laws 1887, c. 24, subc. 7) provides that

"The common council shall have the care, supervision, and control of all the highways, bridges, streets," etc., "within the limits of the city."

It also provides that, whenever the common council shall deem it necessary that any sidewalk shall be constructed or reconstructed, it shall, by resolution, direct such construction or reconstruction; also that it shall be the duty of the street commissioner to conduct and execute any such work, repairs, and improvements upon the streets, alleys, etc., as may be committed to him by the common council.

The sidewalk in question, which was a wooden one, had been built by order of the common council some eight years before plaintiff was injured. The duty of caring for and supervising sidewalks in public streets required it to take notice of the natural tendency of wood to decay. The evidence tended to show that this walk had become so badly decayed that the stringers underneath the plank had almost entirely rotted away, and become incapable of holding the nails with which the planks had been fastened to them; that the result was that the planks had become loose, so that, if a person stepped on or near the end of a plank, the other end was liable to fly up. The evidence also tended to show that this condition of the walk, although gradually becoming worse, had existed for quite a long time.

Counsel for the city is in error in assuming that the sidewalk did not get out of order until the frost came out of the ground in the spring, a few days before plaintiff was injured. The frost and snow may have held the walk in place during the winter, but there is evidence that it was in bad order the fall before. In fact, it is a matter of common knowledge that the decay of wood is a gradual process. Taking all the evidence together, it was ample to justify the jury in finding that the city authorities were guilty of negligence in the premises.

In claiming that the city is not liable for the negligence of its officers such as the street commissioner, counsel for the city fail to distinguish between cases where the duty rests upon a municipal corporation as such, and those where the duty rests upon it as an agency of the state in the exercise of police powers in which the corporation as such has no interest. Police officers in preserving public order, firemen in extinguishing or preventing fires, health officers in taking measures to preserve the public health, fall under the lat-

ter head, while the duty of keeping public streets in repair falls under the former head, and the doctrine of respondeat superior applies.

Within a week after plaintiff was injured, the walk was torn up, and the planks and stringers thrown into a pile along the side of the street. Evidence of their rotten condition at that time or shortly afterwards was competent, as tending to prove that they were rotten at and prior to the time when plaintiff was injured. Courts will take notice of the fact that the decay of wood is a gradual process, and that the condition of the plank and stringers in that respect could not have greatly changed in so short a time. Johnson v. City of St. Paul, 52 Minn. 364, 54 N. W. 735.

There was no error in permitting witnesses to testify as to the appearance of the plaintiff shortly after the accident,—as, for example, that she appeared to be suffering, looked pale, etc. These are things open to the senses and observation, which may be testified to as facts, although incapable of exact description. Neither are they matters which require any expert knowledge to determine. Cannady v. Lynch, 27 Minn. 435, 8 N. W. 164; Tierney v. Minneapolis & St. L. Ry. Co., 33 Minn. 311, 23 N. W. 229.

The plaintiff lived but a short distance from the place of the accident, and went home immediately, where she was met at the door by her daughter. The daughter was asked:

"State what was the appearance of your mother at that time."

No objection was made to the question. The witness answered:

"When I met her at the door, she said: 'Susie, give me your hand. I am hurt terribly.' She said: 'I fell on the sidewalk, and I felt a tearing sensation around here' (indicating). She looked terribly bad."

All that appears from the record to have occurred after the witness gave this answer is as follows:

"Objected to as no part of the res gestæ."

No motion was made to strike out the answer. The court made no ruling on the objection, no exception was taken, and the examination of the witness proceeded. The question was entirely

proper; at least, there was no objection to it.   The answer, so far
as it related to what plaintiff said, was not responsive to the ques-
tion, but no motion was made to strike it out.  Further comment
is unnecessary.

The plaintiff, although in feeble health, appeared in court, and
testified as a witness in her own behalf in her case in chief.   In its
defense the city introduced evidence as to certain statements al-
leged to have been made by plaintiff.   If she had an opportunity to
deny these statements, and failed to do so, that fact would naturally
be quite prejudicial to her case.   Under these circumstances, it was
competent to prove that she was sick in bed, and too ill to appear
and testify in rebuttal.   It is not uncommon to permit a party to ac-
count for the absence of a witness, when the failure to produce him,
if the party was able to do so, would warrant an inference against
him.

Defendant's seventh request to charge was properly refused, for
the reason that there was no evidence that the unsafe condition
of the walk was caused by the frost in the winter, and the thawing
in the spring.   The evidence was undisputed that the unsafe con-
dition of the walk (if it was unsafe) was caused by the rotting of the
stringers under the planks.   As already suggested, the frost during
the winter may have temporarily suspended the effect of this rot-
tenness; but when it thawed in the spring the former condition of
things revived; possibly somewhat aggravated by the lapse of time.

The damages awarded to the plaintiff may be liberal, but in view
of the evidence as to the nature and extent of her injuries, the time
she has lost, the pain she has suffered, that it may be necessary for
her to submit to a somewhat serious surgical operation in order to
regain her health, and that her injuries may be permanent, we
should not be warranted in holding that the damages were ex-
cessive.

There is nothing in the suggestion that the damages are excessive
because her injuries have been greatly aggravated by her subse-
quent neglect to take proper care of herself.   That matter was di-
rectly called to the attention of the jury, and they were expressly
instructed that plaintiff could not recover for any aggravation of
her injuries resulting from her own negligence in taking care of

herself after the accident. Indeed, this claim of the defendant had very little, if any, basis on the evidence. All there was to it was that this woman, who was entirely dependent for her own support and that of her small children upon her wages ($5 a week) for working in a laundry, attempted, in order to keep her place, to continue her work for two or three days, when she was compelled, by reason of her illness, to quit work altogether.

This covers all the points urged by counsel which we deem of sufficient importance to require notice.

Order affirmed.