[No. 9007. Department Two. December 2, 1910.]

I. B. MERRILL, *Respondent*, v. JOHN B. STEVENS & COMPANY, *Appellant*.[1]

APPEAL—REVIEW—VERDICT. The verdict of a jury upon conflicting testimony is conclusive on appeal.

EVIDENCE—ABSENT WITNESSES—EXCUSE FOR FAILURE TO PRODUCE— MATERIALITY. It is not error to exclude explanation of the absence of a witness, where no showing was made as to the materiality of his testimony or of the relation in which he stood to the parties.

TRIAL—INSTRUCTIONS—REQUESTS. It is not error to refuse an instruction sufficiently covered in the general charge.

Appeal from a judgment of the superior court for Pierce county, Shackleford, J., entered February 10, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee while unloading a car of grain. Affirmed.

*Hudson & Holt*, for appellant.

*Fitch & Jacobs*, for respondent.

DUNBAR, J.—At the time of the injury to respondent, appellant was conducting a warehouse in Tacoma, which had a platform from three to four feet in height above the ground, extending to within a few feet of the railroad track of the Northern Pacific Railway Company; and at that time was unloading a carload of oats in bulk from the car, and putting it into the warehouse. When the grain was loaded into the cars, a false door was placed on the inside of the facing of the real door. In order to empty the car, a hole was cut in the false

[1]Reported in 112 Pac. 353.

door, at or near the bottom of it. Through this hole the grain passed into a hopper, from which it was conveyed by a mechanical process into the warehouse. When the car was placed at the proper location, so that the middle of the door was in a line with the middle of the hopper, the hopper would be lowered, and the hole would be cut in the door by some one who sat or stood on the hopper itself and bored holes with an auger until the opening was made. The hopper was planked up, and the respondent claims that he was hurt by the breaking of a plank or board which was nailed to the hopper, and upon which he stepped in the performance of his duty.

The allegations of the complaint in this regard are, in substance, that the plaintiff was in the employ of the defendant on or about July 19, 1909, and had been ordered by the foreman in charge to assist in unloading a car of loose grain, which was to be done by means of the hopper of which we have spoken, and screw elevators, and appliances furnished by the appellant for said purpose; that while he was engaged in said work, he was ordered to shut off the supply of grain coming from the car; that this was done by closing this door; that in obeying such order, he moved the lever, shutting off the supply of grain from the hopper to the screw; that it then became necessary for him to shut off the supply of grain to the hopper, and in order to do so, it was necessary for him to reach the car, and the only means provided for doing so was by stepping upon the framework of said hopper; that as he stepped upon the framework of the hopper for said purpose, the same broke, precipitating him to the ground, and he was thereby injured; that the framework broke by reason of its being negligently and insecurely fastened and nailed, and by reason of its being inadequately constructed for the purpose for which it was used; that the manner in which he stepped upon the framework was that usually adopted by the employees of said defendant for such purpose, and was the only way provided whereby said grain could be shut off; that the plaintiff was using due care; that the framework of said

hopper upon which plaintiff was required to step consisted of a board, of about one inch thick and twelve inches wide, nailed in a horizontal position on the frame of said hopper, secured by about four nails, one in either end near the lower edge of the board, and one in either end near the middle of the board; that the upper part of the board was not nailed or secured in any way, and as he stepped upon said frame for the said purpose, said board split at about the point where it was nailed near the center of its width, and threw plaintiff's feet outward and toward the left, throwing him across the remaining part of the hopper frame.

The answer admitted the employment, but denied any negligence in the construction of the hopper, or that plaintiff was injured in the manner described in the complaint; alleged that, if there were any dangers in the performance of the work, they were open, notorious, obvious, and well known to the defendant, or that in the exercise of ordinary prudence and care they should have been known to him; that there was a safe way in which he might have performed the work in which he was then engaged, as well as an unsafe way; and that, with the knowledge of both ways, he voluntarily elected to perform the work in the unsafe way. The case was tried by a jury, and a verdict rendered in favor of the plaintiff. Motion for a new trial was made and denied, and judgment followed.

The principal contention in the argument and briefs of counsel for appellant is that the court erred in denying appellant's motion for judgment, both at the conclusion of respondent's testimony and at the conclusion of all of the testimony in the case. The manner in which the respondent received the injuries complained of, or the manner in which he was performing the work at the time of his precipitation from the frame of the hopper, was a question which was very strongly contested; it being contended by the appellant and many of his witnesses that the respondent, in passing across the space, had one foot on the platform and the other on the

doorsill, that it was not necessary for him to step upon the frame of the hopper, and that he did not do so as a matter of fact. Special interrogatories were propounded to the jury on this question, the first being: "Do you find that he fell while he had one foot on the platform and the other on the doorsill of the car?" Second: "Do you find that he fell by reason of one of the boards of the framework of the hopper breaking?" The jury answered the first interrogatory "No," and the second "Yes." This renders unnecessary a discussion of these propositions. The other question of fact, viz., the manner in which this work could most safely and practicably be done, was also submitted to the jury and decided against appellant's contention.

It is claimed that the court erred in excluding the testimony of John B. Stevens, a member of the defendant corporation. When asked what effort, if any, he had made to find one John Vusard, this question was objected to by the court, and is alleged as error on the theory that, where it is within the power of a party to produce evidence material to the controversy, and he does not do so, his failure to do so may be construed against him; that this applies particularly to those cases where the witness was in the employ of the party. Appellant cites 9 Enc. Ev., pp. 966-7-8, to sustain this contention. The rule is there laid down that evidence explaining the absence of a material witness is admissible when the failure to produce him would warrant an unfavorable inference; and there is no doubt of the soundness of that rule when it is applied to a proper case. The cases that are cited by the author to sustain this text, viz.: *Brown v. Barse,* 10 App. Div. 444, 42 N. Y. Supp. 306, and *Hall v. City of Austin,* 73 Minn. 134, 75 N. W. 1121, lend no support to the contention in this case. In the first case, the defendant was not present at the trial. The plaintiff testified to personal transactions with him, which the defendant would naturally have taken the stand to deny if the defense which he had pleaded was true. The court said that, in his absence, his counsel had a right

to prove any fact the effect of which was to excuse his failure to attend and give evidence in his own behalf, because the nonattendance of an absent defendant who had a personal knowledge of the facts, if any, which constituted his defense, and his failure to testify, might properly be considered by the jury as bearing upon the strength of his case. In the second, the plaintiff, although in feeble health, appeared in court and testified as a witness in her own behalf in her case in chief. In its defense the city introduced evidence as to certain statements alleged to have been made by her, and it was said that, if she had an opportunity to deny these statements and failed to do so, that fact would naturally be quite prejudicial to the whole case, and under the circumstances it was competent to prove that she was sick in bed and too ill to appear and testify in rebuttal. Many other cases may be found sustaining the same doctrine under various circumstances.

But in this case there was nothing to indicate that John Vusard had any special knowledge of the matters in controversy. The question did not even indicate that he had been present at the time of the accident, although it might appear in some other stage of the proceedings; or that he was in the employ of the appellant; or that, if he had been, how long a time it had been since the employment ceased. All that occurred was this:

"Q. State to the jury what effort, if any, you have made to find one John Vusard who was said to have been present at the time of this accident. The Court: I do not see how that is material. Mr. Holt: If you rule it out I would like to save an exception. That is all. The Court: I rule it out and you may have an exception."

No statement was made to the court, showing or claiming to show the relation in which Vusard stood to the witness, and no showing as to what the witness expected that Vusard would testify to if he were present. We think that, so far as the record shows, the court was right in holding that the question was immaterial.

The appellant asked the court to instruct the jury as follows:

"You are instructed, gentlemen of the jury, that even if you should believe from a fair preponderance of the evidence that the framework of the hopper broke when the plaintiff stepped on it, yet if you further believe that on account of the manner in which the framework was constructed, it was dangerous to step on it, and that the plaintiff knew that it was dangerous, or in the exercise of ordinary care for his safety should have known and that there was a safe way or ways in which the plaintiff might have performed his work, known to him, then you will find the verdict for the defendant, for the reason that the plaintiff in such case would be guilty of negligence himself, and the defendant cannot be held responsible for the plaintiff's own negligent choice of the manner in which he performed his work."

This instruction was refused, and the refusal is assigned as error. There is probably no objection to this instruction, if the substance of it was not given by the court on its own motion. The court, after instructing the jury on the general propositions involved in cases of this kind, guarding, we think, with care the rights of the appellant in every particular, proceeded as follows:

"Where there are two methods by which an employee can do work and both are equally available, convenient and speedy, and one is safe and the other unsafe, and the employee of his own volition chooses the unsafe method and is injured, he is in law held to be guilty of contributory negligence. Where there are two methods of work, one safer than the other, and the methods are not equally available, convenient and speedy, it is for the jury to say whether the employee in choosing the less safe method was guilty of contributory negligence, and in determining this question you are to consider whether a person of ordinary prudence would or would not have acted as the employee acted."

The court further instructed the jury:

"The negligence alleged in plaintiff's complaint is that a plank on the side of the hopper frame was insecurely and im-

properly nailed. The way to determine whether any person has been negligent or not is to compare what was done by such person, or left undone by such person, with what would have been done or left undone by a person acting with ordinary prudence. If a man acts as an ordinarily prudent man would act under the same circumstances and conditions, there is no negligence. If a man fails to act as an ordinarily prudent man would under the same circumstances and conditions, there is negligence."

It is contended by appellant that the instruction first quoted fails to state the law applicable to a case where one method was safe and the other was unsafe, but the unsafe one was more convenient than the safe one, and where the unsafe one was more convenient than the safe one and was selected by the sevant. But we think the objections to all these instructions are hypercritical, and that the jury were not misled by any fine distinctions which might possibly be discovered by a very logical and astute mind and one skilled in detecting distinctions in language. This remark applies also to the criticism on the last instruction which we have quoted, where an objection is made that the word "ordinarily" is misplaced, and the court, instead of using the words "acting with prudence," uses the language, "a person of ordinary prudence." It is claimed that these instructions to the jury gave them their choice of tests, viz., a test of a person acting with ordinary prudence; the test of the conduct of an ordinarily prudent person acting in manner not stated; and the test of a person of ordinary prudence acting in some manner not defined. We think that these objections are too refined to have any practical weight. The instructions as a whole, it seems to us, squarely place the issues, the duty of the servant and the duty of the master, respectively, before the jury, and that the verdict was rendered under instructions which were in no way prejudicial to the appellant.

There being no error discoverable, the judgment will be affirmed.

RUDKIN, C. J., CHADWICK, and CROW, JJ., concur.