[No. 9508. Department One. August 10, 1911.]

## FLORENCE H. NEAL *et al.*, *Respondents*, v. PHOENIX LUMBER COMPANY, *Appellant*.[1]

PLEADING—SUFFICIENCY OF COMPLAINT—BILL OF PARTICULARS—ACTION FOR DEATH—DISCRETION. It is not an abuse of discretion to refuse to order a bill of particulars as to the negligent construction of a penstock of a mill, alleged to be such that the penstock would not withstand the pressure of high water when it was empty, where the defendant had owned it for twelve years and knew the manner of its construction, especially in an action for death caused thereby.

MASTER AND SERVANT—SAFE PLACE—NEGLIGENCE OF MASTER—EVIDENCE—QUESTION FOR JURY. It is for the jury to determine whether the exercise of reasonable care required the owner of a mill to anticipate that unusually high water, an empty penstock which was structurally defective, and an employee in the wheel pit might occur at the same time, where the penstock was not constructed so as to withstand the pressure of water from without when the water was high and the penstock was empty in that there were no inside upright timbers bracing planks nailed to timbers on the inside, the defendant had owned the mill twelve years, and reasonable care would have ascertained the structural insufficiency of the penstock.

SAME—ASSUMPTION OF RISKS—CONTRIBUTORY NEGLIGENCE — EVIDENCE—QUESTION FOR JURY. In such a case, whether the foreman and millwright of the mill assumed the risks, or was in the exercise of reasonable care in entering the penstock, is for the jury, where it appears that he was not employed when the mill was originally constructed, and was not an engineer, but had gained his knowledge by experience only, and there was no evidence that he

[1]Reported in 117 Pac. 267.

knew the pressure exerted by the water or the resisting power of the timbers; since he will not be presumed to have known the danger from the physical facts with no knowledge of mechanics.

DEATH—DAMAGES—EXCESSIVE VERDICT. A judgment of $13,500 for the death of a millwright, thirty-six years of age, in good health, earning about $1,400 a year, leaving a widow twenty-six years of age and a daughter seven years of age, is not excessive.

DEATH—DAMAGES—INSTRUCTIONS. In an action for the wrongful death of a father, leaving a minor daughter, an instruction as to the measure of damages accruing to the daughter until she becomes of age is not erroneous where the language carries with it the implied provision that she shall live until that time.

MASTER AND SERVANT—ASSUMPTION OF RISKS—DUTY TO INSPECT. In an action for the death of a millwright whose duty it was to keep the mill in repair, it is proper to refuse an instruction to the effect that it was his duty to inspect and make necessary changes respecting the original system of construction of a penstock, when he was not a constructor or hydraulic engineer.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered December 20, 1910, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for the death of an employee in a mill, drowned in the wheel pit through the negligent construction of the penstock. Affirmed.

*Post, Avery & Higgins,* for appellant.
*Graves, Kizer & Graves,* for respondents.

Gose, J.—The plaintiffs are respectively the widow and minor daughter of Charles Neal, deceased. Charles Neal was drowned in the wheel pit at the defendant's mill, while in its employ, on April 2, 1910. It is charged that he lost his life in consequence of the negligence of the defendant. There was a verdict and judgment in favor of the plaintiffs for $13,500. The defendant has appealed.

Succinctly stated, the complaint alleges that the appellant corporation is engaged in the operation of a sawmill, the motive power being furnished by the waters of the Spokane river, conducted through a flume into a penstock, thence

through another flume upon turbine wheels which, through the power of the water, operates the machinery of the mill; that the construction of the penstock was negligent, unscientific, and improper in its original design and its construction, in that it was not built so as to resist the force of the waters from without when the river was high and the penstock was empty; that it became the duty of the deceased, in the discharge of his duties as a millwright, to enter the wheel pit in order to repair the wheels; that to do so he closed the gates of the flume for the purpose of emptying the penstock and wheel pit, and that, while repairing the wheels, the penstock gave way in consequence of the pressure of the water of the river from without, immediately causing his death by drowning.

Before answering, the appellant moved the court to require the respondents to furnish a bill of particulars showing in what respect the penstock was negligently or improperly or unscientifically constructed. The denial of this motion suggests the first error claimed. The granting or refusing a bill of particulars rests in the sound discretion of the court, and its conclusions will not be disturbed except for abuse of discretion. *Turner v. Great Northern R. Co.*, 15 Wash. 213, 46 Pac. 243, 55 Am. St. 883. The rule stated is peculiarly applicable where the suit is waged by the heirs or personal representatives of a deceased person. *Donohue v. Meares*, 19 N. Y. Supp. 585. The ultimate fact alleged is that the penstock was so negligently constructed that, when it was emptied and the river was high, it would not and did not withstand the pressure of the water, and that the deceased, while in the discharge of his duty, came to his death in consequence of such defective construction. We think the appellant was sufficiently advised of the negligence relied upon for a recovery. It had owned and operated the plant for about twelve years. Its mill is situated upon and across the south channel of the Spokane river. It knew that the penstock was made of wooden material, formed by nailing heavy plank on

the inside of large vertical timbers, and that there were no inside upright or cross timbers.

At the close of respondents' evidence, the appellant moved for a nonsuit; and at the close of all of the evidence, it moved for a judgment. The denial of these motions is the next error suggested. It is said that the evidence does not tend to show, (1) that the appellant knew, or by the exercise of reasonable care could have known, of the fact that the penstock was not constructed to withstand the pressure of the water from without when the river was high and the penstock was empty; and (2) that it does not tend to show that the deceased did not know, or in the exercise of reasonable care could not have known, of the weakness of the penstock in that respect. These suggestions necessitate a brief statement of the facts disclosed by the record.

The appellant acquired the mill by purchase in 1898, had it examined and somewhat remodeled, and thereafter operated it without accident, so far as the record discloses, until the happening of the accident involved in this suit. There is no evidence that any change was made or suggested in the flume or penstock. The Spokane river has its source in Lake Coeur d'Alene, which is fed by mountain streams, and is therefore subject to sudden rises. The south branch of the river, upon which the mill is situated, was somewhat higher on the last of March, 1910, than it had theretofore been known. The waters were receding on the second of April when the accident happened. The mill had then been shut down for about ten days to await a subsidence of the waters and the repair of the wheel. The waters of the main channel of the river were some two feet higher in 1894 than in 1910. A short distance above the appellant's mill, the river divides, forming what is termed the north and south channels. The presence of a wingdam in the main channel and the closing of a branch of the south channel, which formerly flowed into the north channel at a point above the appellant's mill, were facts known to the appellant before the accident, and caused the south

channel to carry more than its proportion of the waters of the river. The appellant's manager knew that the deceased was intending to empty the penstock and wheel pit for the purpose of repairing the wheel.

The flume is twenty-seven feet in width at the intake, fifteen and one-half feet at the penstock, and has a depth of nine feet. The penstock extends twelve feet below the bottom of the flume, giving it a depth altogether of about twenty-one feet. The dimensions of the penstock are fifteen and one-half by seven and one-half feet. All the measurements stated are inside measurements. The framework of the penstock consists of timbers 14 by 14, and 12 by 12, placed two feet apart, outside measurement, and sustained by truss rods or braces. Planks were nailed to the inside of these timbers. The first five planks from the bottom, where the greatest pressure was exerted, were 4 by 12. The remainder were three-inch plank. The cylindrical flume leading from the penstock to the wheel pit and the wheels is about 8 by 9 feet. The waters of the river were running over the top of the flume on the day of the accident.

The evidence of the civil engineers shows conclusively that the penstock was not constructed so as to withstand the pressure of the water from without when the river is high and the penstock is empty, in that there were no inside upright timbers or cross-beams or braces. The deceased knew of the physical facts, except the force exerted by the pressure of the water and the resisting power of the penstock from the force without. He was not a constructor or hydraulic engineer. He commenced working in a mill as a common laborer when he was sixteen years of age. He began working for appellant as a trimmer in 1898, and continued at that work for three years. He then worked for it as an edger man for four or five years, when he became its foreman and millwright, continuing in that capacity until his death. He had been foreman for about four or five years. It was his duty to see that the mill flume and penstock were kept in

repair.   But it was not his duty to have the plant inspected
with a view to determining its structural sufficiency.

From the facts stated it is obvious that the jury were
warranted in finding that the appellant, by the exercise
of reasonable care, could have ascertained the structural
insufficiency of the penstock before the happening of the
accident.   This is made clear from the evidence of the civil
engineers.   Nor does the fact that the south branch of the
river was higher than it had theretofore been known relieve
it as a matter of law.   It knew, as we have said, that the
south channel was carrying more than its proportion of the
waters of the river, and it was a question for the jury
whether, knowing that fact, it had exercised the care that
reasonable prudence required considering the forces surround-
ing it.   It is true, as the appellant states, that it is not an
insurer of the safety of the instrumentalities which it em-
ploys.   However, the jury, we think, were warranted in con-
cluding that an exercise of reasonable care upon its part re-
quired it to anticipate that it might become necessary to
empty the penstock when the river was at its flood for the
purpose of repairing the wheels.   That work could only be
done when there was no water in the penstock or wheel pit.
Indeed, it knew that fact at the time the deceased entered
the wheel pit to repair the wheel preparatory to putting the
mill into operation.   It was for the jury to determine whether
the exercise of reasonable care required the appellant to an-
ticipate that high water, an empty penstock, and an employee
in the wheel pit, might occur at the same time.   The death
of the deceased cannot be attributed, as a matter of law, to
accident, or to unusual or extraordinary causes which an
employer, exercising reasonable care, considering the sur-
rounding forces, could not have anticipated.

"It is well settled that an employer is presumed to be
familiar with the dangers, latent as well as patent, ordinarily
accompanying the business in which he is engaged. . . This
doctrine requires him to take notice of the normal charac-

teristic properties of the material substances which he uses, and the physical and mechanical laws which operate upon them." 1 Labatt, Master and Servant, § 129a.

"For injuries caused by his failure to foresee the results of the operation of natural laws which he is presumed to comprehend the master is liable, even though such results may be of an unusual character." Id., § 141.

See, also, *Chicago, M. & St. P. R. Co. v. Riley*, 145 Fed. 137; *Latorre v. Central Stamping Co.*, 9 App. Div. 195, 41 N. Y. Supp. 99; *Scagel v. Chicago, M. & St. P. R. Co.*, 83 Iowa 380, 49 N. W. 990.

The true criterion is stated in *Wabash St. L. & P. R. Co. v. Locke*, 112 Ind. 404, 14 N. E. 391, 2 Am. St. 193, cited by the appellant:

"The rule deducible from the authorities is cases analogous to the present is, that in order that liability shall attach for an injury occasioned by something not inherently dangerous and defective, which is found upon the ground of, or in use by, one who is under a qualified obligation to the injured person, it must be shown that the defendant either knew, or that, by the exercise of such reasonable skill, vigilance and sagacity as are ordinarily possessed and employed by persons experienced in the particular business to which the thing pertains, he should have known of its defective and dangerous condition, and that the natural and probable consequence of its use would be to produce injury to some one."

The difficulty lies in the application of the rule. The appellant argues that this question should be ruled in its favor by the court as a matter of law, whilst we think that the facts of the case warranted its submission to the jury. As was said in *Koontz v. Chicago etc. R. Co.*, 65 Iowa 224, 21 N. W. 577, 54 Am. Rep. 5, also cited by the appellant: "Ordinary care does not require that every possible contingency must be anticipated and guarded against, but only such as are likely to occur." And as was said in *Carter v. Cape Fear Lumber Co.*, 129 N. C. 203, 39 S. E. 828:

"It is right that one should be required to anticipate and guard against consequences that may be reasonably expected

to occur, but it would be violative of every principle of law or justice if he should be compelled to foresee and provide against that which no reasonable man would expect to happen."

In answer to a special interrogatory the jury found that the penstock broke because of its faulty construction. The evidence of the civil engineers is that the penstock when empty could not reasonably be expected to withstand the pressure of the water around it, even at low water.

The next question is more difficult, viz., was the deceased, as foreman of the mill, in the exercise of reasonable care, required to know of the structural weakness of the penstock. We think that, under the facts stated, this was a question for the jury. He was not an engineer. Such knowledge as he had was acquired in the school of experience. There is no evidence showing, or tending to show, that he knew either the pressure exerted by the water or the resisting power of the timbers. The jury might well have found that, when he became foreman of the mill, he had a right to assume the structural sufficiency of the plant in all its parts, in the absence of patent defects; and none such are claimed to have existed. It was his duty to use reasonable care to maintain the efficiency of the plant. But it was not his duty to employ engineers to inspect it with a view of ascertaining whether it had been scientifically constructed. If he had permitted the penstock to deteriorate and his death had resulted from that cause, the negligence would have been his and there could be no recovery. He assumed the risk of dangers that were patent, but he did not assume the risk of those that were latent and unknown to him and not arising from deterioration. He knew the physical facts, but having no knowledge of mechanics he will not be presumed to have known the danger that beset him when he met his death. 1 Labatt, Master and Servant, § 279a; *Shoemaker v. Bryant Lumber & Shingle Mfg. Co.*, 27 Wash. 637, 68 Pac. 380; *Pearson v. Federal Min. etc. Co.*, 42 Wash. 90, 84 Pac. 632; *Meshishnek v. Se-*

*attle Sand & Gravel Co.,* 51 Wash. 382, 99 Pac. 9; *Ward v. National Lumber & Box Co.,* 54 Wash. 304, 103 Pac. 1; *Galveston etc. R. Co. v. Smith,* 24 Tex. Civ. App. 127, 57 S. W. 999; *Wagner v. Jayne Chemical Co.* 147 Pa. St. 475, 23 Atl. 772, 30 Am. St. 745; *Davidson v. Cornell,* 132 N. Y. 228, 30 N. E. 573; *Eddy v. Aurora Iron Min. Co.,* 81 Mich. 548, 46 N. W. 17; *Texas & Pac. R. Co. v. Archibald,* 170 U. S. 665.

What we have said touching the question of asumption of risk disposes of the question of contributory negligence. Not knowing the risk, the deceased did not assume it, and he was not guilty of contributory negligence in working at a place which he did not know, or in the exercise of reasoanble care could not have known to be dangerous.

As already suggested the jury returned a verdict for $13,500, and a judgment was entered for that amount. The appellant asserts that the amount is excessive. The deceased was thirty-six years of age, in good health, earning about $1,400 a year, and had a life expectancy of about thirty-one years at the time of his death. His widow was twenty-six years of age and his daughter seven years of age. We do not think the damages awarded are excessive. *Walker v. McNeill,* 17 Wash. 582, 50 Pac. 518; *Harris v. Puget Sound Elec. R.,* 52 Wash. 289, 100 Pac. 838; *Walters v. Spokane International R. Co.,* 58 Wash. 293, 108 Pac. 593.

The court instructed the jury relative to the rights of the minor daughter as follows:

"You will then consider from all the facts and circumstances in the case what sum of money he would probably have expended in the care, support, maintenance and education of the minor child, Marguerite M. Neal, from the period of his death until said Marguerite M. Neal should have arrived at the age of eighteen years. You will likewise consider the care, attention, advice and training which he would probably have given her from the time of his death until she reached the

age of eighteen years, and determine what the pecuniary value of that for that period of time would be to her."

In criticism of this instruction, it is said that it assumes that she will live until she is eighteen years of age. The argument is technical. We think the language carries with it the implied provision that the daughter shall live to that age. The jury knew as well as the court the uncertainty of human life, and no doubt read such an exception into the instruction. The intelligence and fairness of the jury must be assumed, or trial by jury becomes farcical. *State v. Williams*, 62 Wash. 286, 113 Pac. 780; *Chicago, M. & P. S. R. Co. v. True*, 62 Wash. 646, 114 Pac. 515; *Merrill v. Stevens & Co.*, 61 Wash. 28, 112 Pac. 353; *Andrews v. Chicago, M. & St. P. R. Co.*, 86 Iowa 677, 53 N. W. 399; *Texas & Pac. R. Co. v. Yarbough* (Tex. Civ. App.), 73 S. W. 844.

Error is assigned in the refusal of the court to give the following instruction:

"If you find from the evidence that the deceased Neal was the foreman of, and in charge of the mill, with authority and charged by his employer with the duty to inspect and make any and all necessary or proper changes or repairs to secure and preserve safety to himself and others in respect to said flume and penstock, and that he failed to do this, and as a direct result thereof, the accident in question occurred, defendant is not liable, and if you so find from the evidence, you will return a verdict for the defendant."

The instruction, so far as applicable to the evidence, is covered by the instructions given. As we have pointed out, the appellant knew that the deceased was not a skilled constructor or hydraulic engineer. The accident happened not because the deceased failed in his duty to keep the penstock in repair, but solely in consequence of gross negligence in its construction. The facts in the case at bar distinguish it from *Woelflen v. Lewiston-Clarkston Co.*, 49 Wash. 405, 95 Pac. 493. There are numerous other criticisms of the instructions given, and of the failure of the court to give requested in-

structions, but as we view them they are all technical and do not require separate discussion. The jury was fully, clearly, and fairly advised that the appellant is not an insurer of the safety of its appliances; that it was not required to guard against dangers not reasonably to have been anticipated; but that the standard of its duty was to be measured by the conduct of the reasonably prudent man considering the forces surrounding it and the circumstances of the case. As to the deceased, the jury were instructed that he assumed the ordinary and usual risks incident to and arising out of his employment, but that he was not bound to investigate for defects in the construction of his employer's work, nor to pass judgment on the system of construction. They were, however, further instructed that, if he knew of the defects, either in design or construction of the appliances, or if they were open and obvious, he assumed the risk arising from such known dangers.

The judgment is affirmed.

DUNBAR, C. J., FULLERTON, and MOUNT, JJ., concur.