[No. 36531.   Department One.   July 25, 1963.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD MESAROS,
*Appellant.**

*James A. Alfieri* and *Henry Opendack*, for appellant.

*Charles O. Carroll, Frank L. Sullivan, Lewis Guterson,*
and *Jerry A. Sovereign,* for respondent.

*Reported in 384 P. (2d) 372.

RYAN, J.†—This is an appeal from a judgment and sentence for the crime of murder in the first degree.

On December 1, 1961, at approximately 6:50 a.m., a tall, slim man driving a light-colored 1957 Pontiac, with an out-of-state license, drove into a service station on First Avenue South in Seattle, Washington. He parked his car between the plate glass window and the gas pumps at the front of the station. The automobile traffic was exceedingly heavy at that particular time, but six witnesses testified that they heard one or more shots fired. One of the witnesses was alone in his car, and three others were in another car, both traveling in a southerly direction, but momentarily stopped for a traffic light opposite the service station. They testified that they heard three shots fired, saw a man in the station with a gun in his hand, and, although they could not positively identify the defendant, they did say that the man they saw looked like him. The killer walked briskly to his car and drove in a northerly direction. Two other witnesses, who were proceeding north past the station, heard a shot and saw this man get in his car and drive in the same direction. These witnesses followed him for approximately 2½ miles. They positively identified the defendant as the driver, and also identified the car and its license number. Later, it was discovered that $35 had been taken from the station cash register. That same day, the defendant departed for his parents' home in Wallace, Idaho, where he was later arrested. He commenced this trip driving the car in question.

The defendant owned a .357 Magnum which he had purchased, with a supply of hand-loaded cartridges, from a Mr. Robinson in Mullen, Idaho. When the victim, who had been found dead on the floor of the service station, was disrobed in the coroner's office, a spent bullet fell from his clothing. This bullet was identified as a .357 Magnum handload. The defendant admitted to police officers that he owned a .357 Magnum, and that he had thrown it in a river while driving home the day of the killing. Although he made

† Judge Ryan is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

certain other damaging admissions, he did not at any time confess to the crime, and, in his testimony at the trial, he denied having committed it. The information by which the defendant was charged alleged the crime of murder in the first degree and recited in part as follows:

"He, the said DONALD MESAROS, in the County of King, State of Washington, on or about the 1st day of December, 1961, with a premeditated design to effect the death of one Charles H. Johnson, a human being, and while then and there engaged in committing, attempting to commit, or in withdrawing from the scene of the commission of a felony, to-wit: Robbery, willfully, unlawfully and feloniously did shoot at, toward and into the body of the aforementioned Charles H. Johnson, with a certain deadly weapon, to-wit: a pistol, then and there held by the said DONALD MESAROS, thereby mortally wounding the said Charles H. Johnson, from which mortal wounds the said Charles H. Johnson then and there died;"

Prior to the filing of the information, the defendant retained counsel of his own choosing. He was represented by his attorneys throughout the course of these proceedings, and he also secured the services of a private investigator to assist in the preparation of his defense.

The jury returned a verdict of guilty of the crime of murder in the first degree, but found that the death penalty should not be inflicted. Following entry of judgment and sentence, the defendant gave notice of appeal. He makes five assignments of error.

Appellant's first assignment of error is that the trial court erred in denying his counsel the opportunity to cross-examine expert witnesses from a textbook. Two of the witnesses called by the state were John F. Gallagher and Jay Cochran, Jr., who were special agents of the Federal Bureau of Investigation assigned to the F.B.I. laboratory in Washington, D. C. Agent Gallagher testified as to the metallic content of the bullets in question, his determination being made on the basis of a spectrographic analysis. He testified that, in his opinion, the metal in the bullet which fell from the victim's clothing and the metal in bullets made in Mr. Robinson's [Lyman] mold were similar. On cross-examina-

tion, counsel for the appellant asked this witness if he knew of a Doctor Kirk of the University of California. The witness answered that he had heard of him and knew that he had written many articles on criminology and laboratory examination and that he had heard of a book written by Doctor Kirk, but couldn't recall having read it. He did not testify that this book was authoritative or a standard text.

At this point, the state objected to this line of cross-examination of the witness. In answer to the court's question, counsel for the appellant said that he proposed to read from Doctor Kirk's book, which the court refused to permit on respondent's objection. No further attempt was made to pursue this course of cross-examination. A careful review of the testimony, however, indicates that counsel's only purpose was to secure from the witness his opinion that the metal in the bullet which fell from the victim's clothing and that in the bullets from Mr. Robinson's mold were similar, but not necessarily identical. The witness so testified, and the result was that appellant accomplished his apparent purpose without the necessity of using the book.

▉ In such a situation, and even if it is conceded that the court was in error in limiting the cross-examination, such error would be harmless. In *State v. Clayton*, 32 Wn. (2d) 571, 577, 202 P. (2d) 922 (1949), we said:

"It is a familiar rule that a judgment will not be reversed merely because some error has been committed during the trial; but, to constitute reversible error, it must appear that the appellant was prejudiced, or could reasonably be presumed to have been prejudiced, thereby.

" 'The mere fact, however, that error took place is not of itself determinative. To warrant reversal, it must further appear that prejudice resulted, or could reasonably be presumed to have resulted, from such error. [Citing cases]' *State v. Levy*, 8 Wn. (2d) 630, 113 P. (2d) 306."

To determine whether prejudice has resulted, it is necessary to examine the entire record. *State v. Britton*, 27 Wn. (2d) 336, 178 P. (2d) 341 (1947); 3 Am. Jur., Appeal and Error §§ 949, 1003, 1007, pp. 511, 555, 562. See *State v. Gaines*, 144 Wash. 446, 258 Pac. 508 (1927). Examining the record in the instant case, it is clear that no prejudicial

error resulted, if it was error for the court to refuse to permit appellant's counsel to cross-examine this state's witness by reading from a textbook.

There is a further reason which impels us to conclude that the court committed no error in this respect. The appellant failed to lay the necessary foundation of showing that the textbook he proposed to use on cross-examination was recognized as authoritative.

█ The rules governing the use of textbooks on cross-examination of expert witnesses vary in different jurisdictions. 60 A.L.R. (2d) 77. The rule has been established in this state that an expert witness may be cross-examined from textbooks or treatises which he admits to be authoritative. *Cameron v. Benefit Ass'n of Railway Employees*, 6 Wn. (2d) 440, 107 P. (2d) 1096 (1940). In the instant case, the witness did not admit that the textbook from which appellant's counsel proposed to read was authoritative or a standard text.

The appellant relies on *Dinner v. Thorp*, 54 Wn. (2d) 90, 338 P. (2d) 137 (1959), in support of his contention that the court erred in not permitting cross-examination of an expert from a textbook. It is to be observed that, in that case, the expert being subjected to cross-examination admitted that the text which counsel proposed to use was a standard text. Consequently, unlike the present case, the essential element of proof of the authoritative character of the textbook was presented.

Special Agent Cochran also testified as an expert witness and was cross-examined by appellant, but no attempt whatsoever was made to cross-examine this witness from a textbook. As a consequence, there is no question relative to this witness' cross-examination presented to us here for review.

Appellant's second assignment of error is that the court erred in refusing appellant's demand for a bill of particulars. The appellant was arraigned December 19, 1961, at which time his counsel stated to the court that they were ready to plead, but that he was going to request a bill of particulars as to one item in the information, namely, the make and caliber of the pistol alleged to have been used

in the crime charged. The court denied the request, stating that this was purely evidentiary, but granted counsel permission to file the motion. The oral motion was in violation of Special Rule 15 (c) of the Superior Court for King County, which was promulgated April 29, 1960, pursuant to Rule of Pleading, Practice and Procedure 83.04W, and provides as follows:

"Motions, except those mentioned in these rules as oral motions and those made ex parte, or in the course of the trial, shall be in writing and subscribed by the attorney. . . ."

It was also in violation of Rule 23 (b) of the Special Rules which provides as follows:

"All motions, and all pleadings to which the same are directed, shall be filed not later than the second day preceding hearing thereon. . . ."

■■ Nonetheless, the court heard the oral motion and passed upon it, reserving to the appellant the right to renew it by written motion. On the same day, the appellant entered his plea to the information. A request, in writing, for a bill of particulars was filed, but it was never noted for hearing and never presented to the court. Even if this motion had been properly made and presented to the court, we would find no error in the court's denial of it. The information employs the language of the statute and clearly charges the crime of murder in the first degree. After the court denied appellant's oral motion for a bill of particulars, appellant's attorney announced to the court: "We are ready to plead."

In *State v. Bates*, 52 Wn. (2d) 207, 210, 324 P. (2d) 810 (1958), we stated as follows:

"It is sufficient, in charging a crime, to follow the language of the statute, where such crime is there defined and the language used is adequate to apprise the accused with reasonable certainty of the nature of the accusation.
. . .

"If the information charges a crime (and here there can be no question that it does), an information will be considered sufficient when the facts constituting the crime are so stated that a man of common understanding can de-

termine therefrom the offense with which he is charged. *State v. Ternan*, 32 Wn. (2d) 584, 203 P. (2d) 342, and cases cited therein."

The furnishing of a bill of particulars to a defendant is a matter within the discretion of the trial court, and will be disturbed by this court only on a showing of an abuse of discretion. *State v. Bogardus*, 36 Wash. 297, 78 Pac. 942 (1904); *Neal v. Phoenix Lbr. Co.*, 64 Wash. 523, 117 Pac. 267 (1911); *State v. Jewett*, 121 Wash. 620, 209 Pac. 1076 (1922); *State ex rel. Clark v. Hogan*, 49 Wn. (2d) 457, 303 P. (2d) 290 (1956). In *State v. Bogardus, supra*, we said as follows (p. 305):

"The application for a bill of particulars is likewise without sanction in the statutes relating to criminal procedure. While statutes governing the civil procedure require that the courts may require a bill of particulars to be furnished in particular cases, yet this practice is not made applicable to criminal procedure, and, if the power rests in the courts at all when exercising jurisdiction in criminal cases, it must be found among its inherent powers. But whether or not the power does rest within the court, it is not necessary here to determine; for, conceding that it does, it is a discretionary power, and the refusal of the court to exercise it can be reviewed only for abuse of discretion, and we find no such abuse in the present record."

In the case of *State ex rel. Clark v. Hogan, supra*, we said (p. 462):

"The granting or denying of a motion to make more definite and certain, or a request for a bill of particulars, requires the exercise of judicial discretion. *State v. Bogardus*, 36 Wash. 297, 305, 78 Pac. 942 (1904); *Messick v. National Council of the Knights & Ladies of Security*, 103 Wash. 143, 147, 173 Pac. 940 (1918).

"What is judicial discretion? Although it cannot be defined by a hard and fast rule, it means a sound judgment which is not exercised arbitrarily, but with regard to what is right and equitable under the circumstances and the law, and which is directed by the reasoning conscience of the judge to a just result."

Even if it is conceded, arguendo, that the appellant made a proper motion for a bill of particulars, the refusal of that

motion was within the discretion of the trial court and no abuse of that discretion appears here.

The appellant strongly urges his third assignment of error, which is that the trial court erred in denying his motion for the production of documents. This motion was all-inclusive, and, had it been granted, it would have required the prosecuting attorney and law enforcement agencies to lay open for inspection by the appellant virtually all of their files and records pertaining to this case. Appellant asked for an order directing the prosecuting attorney to permit inspection by his attorneys of all statements made by the appellant, all physical evidence in his possession, ballistic reports, all photographs taken at the scene of the crime and of the deceased at any place, and photographs taken in any lineups in which appellant was placed, statements of witnesses, the autopsy report, laboratory or F.B.I. reports, and all police reports relating to the case. This motion was filed January 5, 1962, and noted for hearing on January 9, 1962. The motion was regularly heard and the court ordered that appellant's attorneys be permitted to hear a tape recording of an interrogation of the appellant, it being understood that no written statements nor other recorded statements were made by him.

The court also ordered that the prosecuting attorney supply to the appellant, through his counsel, the addresses of all witnesses endorsed by the prosecuting attorney. The balance of the motion was denied, reserving, however, to the appellant the right to apply for reconsideration of the motion, in the event application be made based on an adequate showing of the necessity therefor. This order was entered January 12, 1962. On January 19, 1962, appellant filed another motion renewing his request for the production of documents, but the record does not show that this motion was ever presented to the court and, on the morning of trial, January 22, 1962, counsel for the appellant announced that he was ready for trial.

The question of the right of a defendant in a criminal matter to pre-trial discovery presents a problem compelling the closest scrutiny and the most considered attention of

the courts. The basic rule in this state in this respect is long-standing and unaltered. In the case of *State v. Thompson,* 54 Wn. (2d) 100, 103, 338 P. (2d) 319 (1959), we said as follows:

"There is a dispute of authority in other jurisdictions as to the extent the prosecution is required to make evidence available which may be in its possession for examination by the defense in criminal cases. However, the rule has been well established in this state since the early case of *State v. Payne,* 10 Wash. 545, 39 Pac. 157 (1895), wherein we held this is a matter within the discretion of the trial court which we will not disturb unless there is a manifest abuse of discretion. *State v. Allen,* 128 Wash. 217, 222 Pac. 502 (1924); *State v. Morrison,* 175 Wash. 656, 27 P. (2d) 1065 (1933); *State v. Ingels,* 4 Wn. (2d) 676, 104 P. (2d) 944 (1940); *State v. Clark,* 21 Wn. (2d) 774, 153 P. (2d) 297 (1944); *State v. Payne,* 25 Wn. (2d) 407, 171 P. (2d) 227 (1946); *State v. Petersen,* 47 Wn. (2d) 836, 289 P. (2d) 1013 (1955).

"In *State v. Payne,* 25 Wn. (2d) 407, citing *State v. Clark, supra,* we affirmed the rule of all our prior decisions. We said:

" ' "A prosecuting attorney is under no obligation to submit any evidence he has in his possession to counsel for a person charged with a crime. *State v. Payne,* 10 Wash. 545, 39 Pac. 157. The state is not required to submit its evidence to counsel for the accused. The accused is not, as a matter of right, entitled to have for inspection before trial evidence which is in possession of the prosecution. *Such matter is peculiarly within the trial court's discretion, with which we will interfere only when there has been a manifest abuse of discretion. State v. Allen,* 128 Wash. 217, 222 Pac. 502; *State v. Morrison,* 175 Wash. 656, 27 P. (2d) 1065; *State v. Ingels,* 4 Wn. (2d) 676, 104 P. (2d) 944." ' (Italics ours.)"

In all of the cases above cited, except the *Petersen* case which was distinguished in the *Thompson* case, the trial court denied requests by the defense to examine evidence in possession of the prosecution. In each instance, we based our opinion on the rule that this was not an abuse of discretion.

There appears to be a growing tendency, not only in this state, but in other jurisdictions as well, to liberalize

the right of a defendant to discovery in criminal cases. See *Powell v. Superior Court,* 48 Cal. (2d) 704, 312 P. (2d) 698 (1957), and *Walker v. Superior Court,* 155 Cal. App. (2d) 134, 317 P. (2d) 130 (1957). The *Thompson* case would appear to follow the same philosophy and reasoning, but it must be remembered that all of these cases are based upon the same fundamental rule that the granting or denial of a defendant's motion for discovery rests within the discretion of the trial court and will not be disturbed in the absence of a manifest abuse of discretion.

In the instant case, the court granted a portion of appellant's motion for inspection and reserved the right to him to renew this motion on a further showing of necessity. Although he prepared an additional motion, he failed to present it to the court. In other words, the court opened the door to him, but he failed to enter. There is no way that this court or anyone else can now discover what the court's ruling might have been, had this motion been further urged and proper showing made in support of it. The court was not given an opportunity to exercise its discretion, although the record indicates a liberal and fair attitude. Under the circumstances of this case, we find no error in the court's failure to grant further discovery.

Appellant's fourth assignment of error is that the trial court erred in denying his motion for a new trial based upon newly discovered evidence. The evidence to which this motion refers is that of Doctor Kirk, who was present at the hearing for a new trial, and testified that the bullet which fell from the decedent's clothing had no marks which would identify it as having come from the Robinson mold. He further testified that he had conducted experiments in an effort to establish that the unmutilated bullet found in the victim's clothing could not have passed through a human body and remained in the condition of this exhibit. He admitted that the bullet had traces of what appeared to be tissue and blood on it and that it could have passed through some flesh. That portion of Doctor Kirk's testimony dealing with whether the bullet in evi-

dence could have come from the Robinson mold tended to directly contradict the testimony of Mr. Cochran, who had testified for the respondent. We are here concerned with whether or not this testimony of Doctor Kirk constituted newly discovered evidence which would be grounds for granting a new trial.

In *State v. Adams*, 181 Wash. 222, 229, 43 P. (2d) 1 (1935), we stated as follows:

" . . . The rule is now settled in this state that, to warrant the granting of a new trial on the ground of newly discovered evidence, it must appear (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching. . . ."

This rule was restated in *State v. Brent,* 28 Wn. (2d) 501, 183 P. (2d) 495 (1947), citing other cases. This case was reversed in *State v. Brent,* 30 Wn. (2d) 286, 191 P. (2d) 682 (1948), but on other grounds.

In the case of *State v. Prince,* 154 Wash. 409, 412, 282 Pac. 907 (1929), we said:

" . . . where the only purpose of newly discovered evidence is to impeach or discredit evidence produced at the trial, a new trial will be denied. *Hoffman v. Hansen,* 118 Wash. 73, 203 Pac. 53; *Johnson v. Smith,* 118 Wash. 146, 203 Pac. 56."

This court has also announced the rule appearing in *State v. Bengston,* 159 Wash. 296, 298, 292 Pac. 1107 (1930), as follows:

"A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court, and his ruling will not be disturbed except it clearly appears that he abused that discretion. *Floe v. Anderson,* 124 Wash. 438, 214 Pac. 827; *State v. Dinas,* 129 Wash. 75, 224 Pac. 597."

■ The evidence upon which appellant's motion is based can hardly withstand the tests required by the foregoing rules. If nothing else, it must be said that such evi-

dence would be merely impeaching or for the purpose of discrediting evidence produced at the trial. An examination of the entire record clearly demonstrates that the evidence of Doctor Kirk will probably not change the result, if a new trial is granted. The balance of the state's case was simply too overwhelming to allow this evidence to be of any measurable consequence.

■ The appellant's fifth assignment of error is that the court erred in denying the motion for a new trial based upon the transposition of exhibits 27 and 28. These were the containers in which the clerk placed the expended and mutilated bullet recovered at the scene of the crime, and the expended but unmutilated bullet which fell from the clothing of the decedent. It would appear that this transposition took place after the trial and was probably done inadvertently by one of the officers of the court or by some person in the clerk's office because there is nothing in the record to show that there was any confusion between these exhibits during the course of trial. Even counsel for the appellant, in his closing argument to the jury, referred to one of the bullets by its proper exhibit number and, in view of all the other testimony in the case in reference to these exhibits, they were clearly identified by their description and it is inconceivable that there could have been any confusion in the minds of the jurors. We do not feel that there is any merit in this assignment of error.

We are convinced that the appellant was accorded a fair and impartial trial and that the evidence amply supported the jury's verdict that the appellant was guilty beyond a reasonable doubt.

The judgment and sentence is affirmed.

OTT, C. J., HILL, ROSELLINI, and HALE, JJ., concur.